

## NUMBER 13-12-00379-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**JULIO NARANJO IGLESIAS A/K/A
JULIO LUIS NARANJO IGLESIAS,**                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                           **Appellee.**

---

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Chief Justice Valdez[1]

By eight issues, appellant, Julio Naranjo Iglesias a/k/a Julio Luis Naranjo

Iglesias, appeals from his conviction for possession of marijuana in an amount more

---

[1] The Honorable Rose Vela, former Justice of this Court, did not participate in deciding the case because her term of office expired on December 31, 2012. In accordance with the appellate rules, she was replaced on panel by Justice Nora L. Longoria. *See* TEX. R. APP. P. 41.1(a).

than 2,000 pounds, a first-degree felony offense.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(6) (West 2010).  We affirm.

## I. BACKGROUND[2]

On August 18, 2009, troopers with the Texas Department of Public Safety ("DPS") were advised by dispatch to be on the lookout for an eighteen-wheel truck with Florida license plates, which according to an anonymous tipster, had been loaded with illegal drugs at a warehouse in Hidalgo County and was currently travelling on a northbound route.  The troopers were patrolling on U.S. Highway 281 when they encountered a tractor trailer matching the description given by the anonymous tipster.  They observed that one of the truck's mud flaps was in violation of the Texas Transportation Code and initiated a traffic stop.  *See* TEX. TRANS. CODE ANN. § 547.606 (West Supp. 2011).  Appellant was the driver of the truck, and co-defendant, Quirino Sanchez, was his passenger.

The vehicle was registered to appellant.  The troopers received consent from appellant to search the truck, which was hauling a refrigerated rig.  Inside the pallets in the trailer, the officers discovered 2,472 pounds of marijuana.  An employee of the company that loaded the trailer with the legitimate load of grapefruit cups, Loop Cold Storage, testified that there was no marijuana mixed with the cargo when they loaded the trailer on August 17, 2009.  There was also testimony that the Loop Cold Storage facility was not the same warehouse identified by the anonymous tipster as the location where appellant's trailer was loaded with illegal drugs.

At the time the traffic stop was initiated, the doors to the trailer were still sealed to maintain the integrity of the load.  The words "Loop Cold Storage" and the number 7566

---

[2] The following undisputed facts were established at trial.

were stamped into the metallic seal. This information matched the information in the bill of lading appellant provided to the DPS troopers during the traffic stop. According to the testimony of Steven W. Whitman, the general manager of a truck stop and freight line with 35 years of experience driving trucks, there are a number of different ways to bypass the type of seal used on the trailer appellant was hauling. In addition, Whitman noted that the type of clamps found on the doors of the trailer were highly unusual and not used in the industry. Despite this, there was no evidence of exactly how the marijuana was loaded into the trailer.

At the conclusion of the jury trial, appellant was found guilty. Appellant elected to have the court determine punishment. Thereafter, the court assessed a 15-year prison sentence. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant argues that the evidence is insufficient to support the jury's finding of guilt. According to appellant, the evidence was primarily that he was the driver of his own tractor trailer and marijuana was found hidden in his produce in his trailer. Appellant contends that there was a complete lack of affirmative links to establish his knowledge of the possession of the drugs.

### A. Standard of Review

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (characterizing the *Jackson* standard as: "Considering all of

3

the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

In reviewing the legal sufficiency of the evidence, we look at events occurring before, during, and after the commission of the offense, and we may rely on actions of the appellant that show an understanding and common design to do the prohibited act. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point directly and independently to the appellant's guilt, so long as the cumulative effect of all the incriminating facts is sufficient to support the conviction. *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 307 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

4

**B. Applicable Law**

Under a hypothetically correct jury charge, the State was required to prove that appellant knowingly or intentionally possessed more than 2,000 pounds of marijuana without legal authority to do so. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121. To prove the element of unlawful possession, the State was required to prove appellant: (1) exercised control, management, or care over the marijuana; and (2) knew the substance possessed was contraband. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). The State must establish, either by direct or circumstantial evidence, that appellant's connection with the contraband was more than merely fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Evidence that "affirmatively links" appellant to the contraband is sufficient to prove that he possessed it knowingly. *Id.*

The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Id.* Thus, the Court of Criminal Appeals has formulated the rule that "when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.*

A nonexclusive list of factors that can be sufficient, either alone or in combination, to establish someone's possession of contraband include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether he was under the influence of a controlled substance or narcotic when arrested; (5) whether he possessed other contraband when arrested; (6) whether he made incriminating statements when arrested; (7) whether he attempted to flee, (8) whether he made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether he owned or had the right to possess the place where the contraband was found; (12) whether the contraband was found in an enclosed place; (13) whether he was found with a large amount of cash; (14) whether his conduct indicated a consciousness of guilt; (15) whether he made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; (17) whether he was observed in a suspicious area under suspicious circumstances; and (18) whether the defendant possessed weapons. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App.—San Antonio 2006, pet. ref'd); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove knowing possession. *Evans*, 202 S.W.3d at 162 n.12. They are not a litmus test. *Id.* An appellate court should not focus on the absence of certain affirmative links, but should consider the logical force of the links that are present. *Edwards v. State*, 178 S.W.3d 139, 144 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

## C. Discussion

Appellant contends that the evidence is insufficient to prove that he actually knew about the marijuana in his trailer. It is questionable whether the affirmative links rule applies in this case because it is undisputed that appellant was the owner and operator of the tractor-trailer in which the marijuana was discovered and arguably in exclusive possession of the vehicle and its contents at the time of his arrest. *See Poindexter*, 153 S.W.3d at 406 (holding that the affirmative links rule applies only "when the accused is not in exclusive possession of the place where the substance is found"). However, given the presence of a passenger in the vehicle, the involvement of unidentified and unnamed third parties in loading the marijuana into the trailer at a remote location, and the absence of any objection by the State, we will assume without deciding that the affirmative links rule applies in this case. Accordingly, we will consider the factors in this case which serve as affirmative links.

First, appellant was present at the time of the search. Second, while the marijuana was not in plain sight, it was quickly discovered by law enforcement during a cursory search of the trailer. Third, appellant was in relatively close proximity to the marijuana. Although its accessibility was limited due to the metallic seal placed on the doors of the trailer, there was testimony that such seals can be bypassed in a number of different ways, which would have given appellant access to the marijuana despite the seal and without breaking it. Fourth, appellant made incriminating statements that were false about his relationship with his passenger, telling the DPS troopers this was his first

7

trip with Sanchez, when, in truth, they had been working together for approximately one and a half months. In addition, appellant's logbook contained a number of inconsistent, if not incorrect, statements. For instance, there was testimony that appellant picked up his load from Loop Cold Storage on August 17, 2009; however, appellant's logbook stated that appellant had been in the sleeper berth all day (off duty). Fifth, appellant was the owner and operator of the tractor-trailer and had the right to control it. Sixth, the marijuana was found in an enclosed place. Seventh, the quantity of marijuana was substantial. Eighth, appellant's tractor-trailer was observed in a suspicious area and under suspicious circumstances insofar as it was seen being loaded at two different warehouses, one being the Loop Cold Storage facility where grapefruit cups were loaded and the second being an unidentified second warehouse in Hidalgo County where the marijuana was loaded. In sum, the logical force of the links, alone and in combination, demonstrates that appellant's connection to the marijuana was more than merely fortuitous—that appellant was not simply an innocent bystander. *See id.*

Appellant argues that the outcome of this case should be controlled by the decision of the Amarillo Court of Appeals in *Valle v. State*, 223 S.W.3d 538 (Tex. App.—Amarillo 2006, pet. dism'd). In that case, the contraband was found within a pallet of corn flour. *Id.* at 539. The corn flour was being hauled in a trailer of an eighteen wheeler along with other cargo. *Id.* The defendant was the driver of the eighteen wheeler. *Id.* On appeal, he argued that the evidence was legally and factually insufficient to support his conviction for possession of the contraband. *Id.* at 540. The Court of Appeals held that the evidence was legally sufficient, but reversed and

8

remanded the case based on factual insufficiency. *Id.* In short, the holding of the Court of Appeals in *Valle* is consistent with the conclusion reached in the case at bar.

Appellant's first issue is overruled.

### III. ADMISSIBILITY OF EVIDENCE

In his second issue, appellant argues that the trial court committed reversible error in allowing a law enforcement officer to testify regarding information provided by an anonymous tipster. The officer testified, over appellant's hearsay objection, that the anonymous tipster informed law enforcement that a tractor trailer with Florida license plates was traveling with a load of marijuana.

### A. Standard of Review

An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998); *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex. Crim. App. 1984).

### B. Applicable Law

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d) (internal quotations omitted). "Hearsay is not admissible except as

9

provided by statute or these rules or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 802.

Testimony by an officer to the effect that he went to a certain place or performed a certain act in response to generalized "information received" is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior. *Poindexter*, 153 S.W.3d at 408 n.21. But details of the information received are considered hearsay and are inadmissible—unless the officer's conduct has been challenged, for instance, as lacking probable cause. *Id.* As the Court of Criminal Appeals stated in *Schaffer v. State*:

> Frequently, testimony will have an impermissible hearsay aspect along with a permissible nonhearsay aspect. Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received." "An arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence and conduct." McCormick [on Evidence (Cleary rev. ed. 1984)] Section 249, p. 734. n.3. The police officer, however, should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted.

*Schaffer v. State*, 777 S.W.2d 111, 114–15 (Tex. Crim. App. 1989).

In *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999), the Court of Criminal Appeals explained that whether testimony constitutes impermissible hearsay "turns on how strongly the content of the out-of-court statement can be inferred from the context." The appropriate inquiry focuses on whether the "information received" testimony is a general description of possible criminality or a specific description of the defendant's purported involvement or link to that activity. *Poindexter*, 153 S.W.3d at 408 n.21. For example, "I received information of possible drugs being sold at 5th and

10

Main" is, under *Head*, an admissible general description of why an officer investigated the situation. *Id.* More specific statements, pointing to the defendant, such as "I received information that drugs were being sold from the defendant's house," clearly convey the content of the out-of-court statement and are inadmissible indirect hearsay under *Head*. *Id.* Of course, if the material issue is whether an officer had probable cause to arrest or search a person, the reasonableness of the officer's conduct is called into question, and the hearsay details of information that he received are admissible. This was acknowledged in *Schaffer*, where the Court of Criminal Appeals stated in a footnote that "an officer's actions may be made an issue before the jury . . . and thus it may be necessary for the officer to testify not only how he happened upon the scene, but also the specific information received so that the jury may resolve any issues regarding an officer's actions." *Schaffer*, 777 S.W.2d at 115 n.4; *see also Benford v. State*, 895 S.W.2d 716, 718 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (holding that officer could testify that third party told him defendant "was the guy with the rocks" because statement was necessary to determine whether probable cause existed to detain and search defendant).

## C. Discussion

In this case, appellant challenged the conduct of the DPS troopers on the grounds that they lacked reasonable suspicion for the traffic stop and probable cause for his arrest. Accordingly, the details of the out-of-court statements by the anonymous tipster were admissible to show the reasonableness of the officer's conduct. *See Poindexter*, 153 S.W.3d at 408 n.21 (holding that details of out-of-court statements may

11

be admissible if "the officer's conduct has been challenged, for instance, as lacking probable cause").

At trial, the information provided by the anonymous tipster was used to show how and why appellant came to the attention of the DPS troopers. In this sense, it was admissible to prove that the troopers detained appellant after they acquired specific information concerning a drug-smuggling operation involving a tractor-trailer whose description matched the appearance of appellant's tractor-trailer. *See id.* The specific information provided to the troopers by the anonymous tipster was admissible to prove that the troopers had a reasonable basis to conclude that the particular person driving the tractor-trailer actually was, had been, or soon would be engaged in criminal activity involving the smuggling of illegal drugs. *See id.* Accordingly, the trial court did not abuse its discretion in allowing the troopers to testify regarding the information received from the anonymous tipster.

Appellant's second issue is overruled.

## IV. DENIAL OF LIMITING INSTRUCTION

In his third issue, appellant argues that the trial court erred in denying his request for a limiting instruction regarding the anonymous tip.

### A. Standard of Review

We review a trial court's refusal to give a limiting instruction under an abuse of discretion standard. *See Shea v. State*, 167 S.W.3d 98, 103–04 (Tex. App.—Waco 2005, pet. ref'd).

### B. Applicable Law

12

Under Rule 105(a) of the Texas Rules of Evidence, if the opposing party requests a limiting instruction for evidence which is admissible for one purpose, such as to prove probable cause, but not for another, such as guilt, the court must restrict the evidence to its proper scope.  *See* TEX. R. EVID. 105(a).  Limiting instructions of this kind are usually not necessary when evidence is relevant only to the issue for which it was admitted or when the evidence may properly be considered on any issue in the case to which it is relevant.  *Lewis v. State*, 815 S.W.2d 560, 566 (Tex. Crim. App. 1991) (citing *Richardson v. State*, 786 S.W.2d 335, 337 (Tex. Crim. App. 1990); *Cantrell v. State*, 731 S.W.2d 84, 95 (Tex. Crim. App. 1987)).  In such event, there is typically no danger that rational jurors will make use of the evidence for an impermissible purpose.  *Id.*

## C.  Discussion

Appellant made his request for a limiting instruction during a pre-trial hearing, after his motion to suppress had been overruled.  After appellant requested the limiting instruction, the trial court responded, "Those objections are overruled."  The trial court did not specifically rule on appellant's request for a limiting instruction.  *See* TEX. R. APP. P. 33.1(a).

Later, during trial, when the first witness testified about the information received from the anonymous informant, appellant made a hearsay objection to the testimony, which was overruled, but he did not renew his request for a limiting instruction.  Thereafter, three additional witnesses testified, without objection, to the same information, and again, appellant failed to renew his request for a limiting instruction.

"[A] trial court does not have discretion to postpone giving a properly requested limiting instruction when that request is made at admission of the evidence."  *Hammock*

13

*v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). However, "[a] failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and relieves the trial judge of any obligation to include a limiting instruction in the jury charge." *Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008); *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).

It is unclear whether appellant's pre-trial request for a limiting instruction would have been sufficient to preserve this issue for appeal. *See* TEX. R. APP. P. 33.1. However, we do not need to reach that issue because the trial court did not rule on appellant's pre-trial request. *See id.* Thus, it is clear that appellant was required to request a limiting instruction at the time the evidence was admitted at trial. *See Hammock*, 46 S.W.3d at 894. Appellant's failure to do so relieved the trial court of any obligation to give the jury a limiting instruction. *See Williams*, 273 S.W.3d at 230. Accordingly, the trial court did not abuse its discretion in failing to give the jury a limiting instruction.

Appellant's third issue is overruled.

## V. INVOCATION OF FIFTH AMENDMENT RIGHT BY CO-DEFENDANT

In his fourth issue, appellant argues that the trial court erred in allowing the State to call his co-defendant as a witness because the witness then proceeded to invoke his right against self-incrimination multiple times in front of the jury. Appellant did not preserve the trial court's error, if any, by making a timely and specific request, objection, or motion to the trial court and obtaining a ruling. *See* TEX. R. APP. P. 33.1(a). Accordingly, appellant's fourth issue is overruled.

## VI. IMPROPER CLOSING ARGUMENT

In his fifth issue, appellant argues that the trial court erred by allowing the prosecution to argue to the jury that appellant was transporting drugs for a cartel. The prosecutor referred to the testimony of Steven Whitman, concerning a different case in which a man had unknowingly delivered "about 10,000 pounds" of marijuana to a Wal-Mart Distribution Center. The prosecutor argued to the jury that the cartels would not make the same mistake again. Appellant objected that the prosecutor's remarks assumed facts not in evidence. The objection was overruled.

Later in the closing, the prosecutor again mentioned that "somebody from the cartels has to follow him up all the way to his destination, to then retrieve it . . . The cartel is not in the business of sticking dope with unsuspecting drivers and then losing a million dollars worth of profit. That's not good business. Ladies and gentlemen of the jury, that's not reasonable."

The prosecutor continued, "So let's think about this, again. If [appellant] didn't know this marijuana was here, how is the cartel going to get their pot back? How are they going to get their 1.4 million dollars worth of product? . . . . This is a business. And the cartel is not in the business of losing business."

At the conclusion of the State's closing argument, the prosecutor again emphasized a connection between appellant and the cartels:

> The question is: Did he know it, or not? I want you to ask yourselves. Okay. If he didn't know, then what? And if he did know, then what? Does it make more sense that he knew when he was taking this somewhere to be unloaded so the cartels could make their money? Or does it make more sense that the cartels trusted 1.4 million dollars worth of marijuana of something that he didn't know was there? Ladies and gentleman of the jury, if he didn't know, how were the cartels going to make their money?

15

Appellant objected that there was no evidence of cartels, and the court sustained the objection. Appellant did not seek further relief.

## A. Applicable Law

Jury argument is permissible if it constitutes a summation of the evidence, a reasonable deduction from the evidence, an answer to argument of opposing counsel, or a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). To complain of improper jury argument, a defendant must generally object to the argument and pursue his objection to an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Nadal v. State*, 348 S.W.3d 304, 319 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). If the trial court sustains the objection, the defendant must also request an instruction to disregard and move for a mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Campos v. State*, 946 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

## B. Discussion

The general rule is that a party must request the desired relief to preserve a complaint on appeal. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). If a trial court sustains an objection to improper jury argument, as it did in this case, the complaining party must request an instruction to disregard to preserve error on appeal if an instruction to disregard could have cured the prejudice resulting from the argument. *See id.* If the prejudice arising from an erroneous jury argument were incurable, a defendant would be required to request a mistrial to preserve error on appeal because a mistrial would be the appropriate remedy. *Id.*

In this case, appellant requested neither an instruction to disregard nor a mistrial. Accordingly, appellant may not complain about the improper jury argument on appeal. *See id.*

Appellant's fifth issue is overruled.

## VII. PUNISHMENT RANGE

In his sixth issue, appellant argues that the trial court erred in refusing to consider the full range of punishment. During the sentencing hearing, appellant requested community supervision; however, the trial court stated that he would not give community supervision due to the amount of drugs involved in this case:

> Well, first of all, the probation is going to be denied, I just don't feel it's appropriate, for this amount of drugs, to have a suspended sentence [in a case involving] . . . 2,472 pounds. I mean, it's not only me but all of the other judges in this area who send people up to the penitentiary for a lot less drugs that this. And this is more than a ton of drugs in a vehicle that, apparently, [appellant] owned.

### A. Applicable Law

The Fourteenth Amendment provides that the state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV; *see also* TEX. CONST. art. I, § 19. Due process requires that the trial court conduct itself in a neutral and detached manner. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process." *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005); *see also Brumit*, 206 S.W.3d at 645. However, absent a clear showing of bias, we presume the trial court's actions were correct. *Brumit*, 206 S.W.3d at 645. Bias is not shown when (1) the trial court

hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment. *See id.*

## B. Discussion

Rule 33.1 of the Texas Rules of Appellate Procedure provides that a timely objection is required to preserve error for appeal. *See* TEX. R. APP. P. 33.1(a). In this case, appellant made no objection when the trial court announced that his probation would be denied. Under current precedent, it is unclear whether appellant has preserved this issue for review. *See Brumit*, 206 S.W.3d at 644–45 ("We need not decide today whether an objection below is required to preserve an error of this nature on appeal because the record here does not reflect partiality of the trial court or that a predetermined sentence was imposed.").

Assuming without deciding that the issue has been preserved for our review, we conclude that appellant has failed to demonstrate bias or partiality of the trial court or that a predetermined sentence was imposed. *See id.* On the contrary, the record shows that the trial court considered appellant's request for community supervision and based his decision to deny the request on the evidence he heard regarding the offense for which appellant had been found guilty, specifically, the substantial quantity of drugs involved in the offense. Furthermore, there is explicit evidence that the trial court considered the full range of punishment, noting on the record that he could sentence appellant from anywhere from 5 to 99 years to life imprisonment.

Accordingly, appellant's sixth issue is overruled.

## VIII. Violation of Fifth Amendment Rights

In his seventh issue, appellant argues that the trial court violated his Fifth Amendment rights by telling appellant that he would sentence him to less prison time if he would admit that he was guilty. During the punishment phase of trial, the judge asked appellant he had anything to say. Appellant answered, "No, sir. I don't have anything to say." Then, the judge stated, "[I]t would be better for you . . . [if] you acknowledged your responsibility and admitted fault, and [said] you were sorry for what you did . . . I will give you credit. But y'all are pretending like you have no knowledge of 2,472 pounds of drugs in your trailer."

The judge continued in relevant part:

I know that you exercised your right to remain silent, not to say anything at your trial . . . . But now you're at the sentencing phase, and you need to convince me . . . I got the broadest range of punishment allowed by law . . . but they look at whether you show some remorse, and whether you admit your guilt. And—you know, I give your credit for that, if you do. I'll sentence you to a lesser amount—you know—I just feel you're insulting my intelligence if you have the 2,472 pounds of drugs in your tractor-trailer, and you have no idea how it got there . . . the jury disbelieved that—and I am having a very hard time believing that you didn't know anything about it.

Now if you were to admit to me, and apologize to me, and just say, "Judge? I made a mistake . . . . Please don't sentence me to a long period of time . . . . . I made a mistake[] . . . .

But if you need me to consider the low sentence you need to tell me something. I mean—either don't say anything if you're just going to tell me you had no idea that it was there . . . . All right. Well, do you want to say anything to me, [appellant], before I make a decision?

Appellant answered in the negative and did not make a further statement to the court.

### A. Applicable Law

It is a fundamental tenet of Texas and federal constitutional jurisprudence that every person has the right to avoid self-incrimination by exercising the privilege provided him by the Fifth Amendment and the Texas Constitution. U.S. CONST. amend. V; TEX. CONST. art. I, § 10. A criminal defendant does not lose this constitutional protection merely because he has been convicted of a crime. *Chapman v. State*, 115 S.W.3d 1, 5 (Tex. Crim. App. 2003). A criminal defendant retains the Fifth Amendment right to remain silent at a sentencing proceeding, and a trial court may not draw an adverse inference from such silence. *Carroll v. State*, 42 S.W.3d 129, 130 (Tex. Crim. App. 2001).

## B. Discussion

Failure to make a timely objection at trial waives any appellate complaint regarding error. *See Collins v. State*, 378 S.W.3d 629, 631 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing TEX. R. APP. P. 33.1(a)). However, an exception exists in the classic penalty situation, where a person is threatened with punishment for relying upon his Fifth Amendment privilege. *Chapman*, 115 S.W.3d at 6. The key inquiry is "whether the accused was deprived of his free choice to admit, to deny, or to refuse to answer." *Id.* The leading "penalty" case on the use of self-incriminating statements is *Minnesota v. Murphy*, 465 U.S. 420 (1984), in which the Supreme Court held that the defendant's failure to invoke his Fifth Amendment privilege was not excused. *Id.* at 440. As explained in *Murphy*:

> If the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Id.* at 435.

In the context of a sentencing hearing, the Court of Criminal Appeals has focused on whether the trial court stated that the defendant would receive a greater sentence if he chose not to testify. *See Johnson v. State*, 357 S.W.3d 653, 659 (Tex. Crim. App. 2012) ("The trial court never told Appellant he would receive a greater sentence if he chose not to testify."). In this case, the trial court told appellant, "[I]f you need me to consider the low sentence you need to tell me something." The clear implication is that appellant would receive a greater sentence if he did not testify. Thus, this case presents the classic penalty situation, where appellant's failure to object is excused. *See Chapman*, 115 S.W.3d at 6.

Although the issue is preserved for review, it is ultimately without merit because appellant was not compelled to testify in violation of the Fifth Amendment. On the contrary, appellant did not testify during the punishment phase of trial. Moreover, to the extent appellant argues that the trial court did not consider the "low sentence" as a result of his refusal to testify, the record is to the contrary. The trial court specifically stated that the punishment range was anywhere from 5 to 99 years to life imprisonment, and the court also stated that it was considering a 50-year sentence. Ultimately, the court gave appellant a 15-year sentence, which is clearly a "low sentence" in light of the foregoing. Thus, appellant's contention is without merit.

Appellant's seventh issue is overruled.

## IX. MOTION TO SUPPRESS

In his eighth issue, appellant argues that the trial court erred in denying his motion to suppress. According to appellant, the traffic stop leading to his arrest was

21

conducted in violation of the Fourth Amendment. During the evidentiary hearing on appellant's motion to suppress, the trial court heard testimony from the officer that appellant was stopped due to a traffic violation (high mud flaps). According to appellant, the officer had no reasonable suspicion to conduct a traffic stop. The trial court denied the motion to suppress and subsequently entered a written order with findings of fact and conclusions of law.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Generally, with respect to a suppression ruling, the trial court's findings of historical fact supported by the record, as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor, are given "almost total deference." *Guzman*, 955 S.W.2d at 89. A de novo standard is applied to a trial court's determination of the law and its application of law to the facts that do not turn upon an evaluation of credibility and demeanor. *Id.* We will uphold a trial court's ruling on a motion to suppress if the ruling is reasonably supported by the record, and the ruling is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

## B. Applicable Law

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without

22

a warrant.  *Id.*  Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  *Id.*

An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law.  *Id.*  Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.  *Id.*  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  *Id.*  A reasonable-suspicion determination is made by considering the totality of the circumstances.  *Id.* at 492–93.

## C.  Discussion

In this case, the trial court found that the DPS troopers received information identifying appellant's vehicle as being used in criminal activity involving the smuggling of illegal drugs.  The trial court found that based on this specific information, the troopers believed that appellant, as the driver of the vehicle, was violating the law.  In addition, the trial court found that the troopers had observed that appellant's vehicle was in violation of a provision of the transportation code regulating mud flaps.  *See* TEX. TRANS. CODE ANN. § 547.606.  Based on the foregoing findings, which are supported by the record, the troopers had two independent grounds for initiating a traffic stop, both of which pass muster under the Fourth Amendment.  *See Ford*, 158 S.W.3d at 492.

23

Moreover, the trial court found that, after the traffic stop was initiated, the troopers requested and obtained appellant's voluntary consent to search the trailer. Thus, it was not necessary for the State to establish probable cause for the warrantless search. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) ("Consent to search is one of the well-established exceptions to the constitutional requirements of both probable cause and a warrant."). The trial court did not err in denying appellant's motion to suppress.

Appellant's eighth issue is overruled.

## X. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
17th day January, 2013.