

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---
### NO. PD-0527-11
---

**CHARLES MICHAEL JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY
---

HERVEY, J. delivered the opinion for a unanimous Court.

## O P I N I O N

The State asks this Court to reverse the judgment of the court of appeals, which held that the trial court improperly influenced Appellant to testify in violation of his Fifth Amendment privilege to remain silent. We hold that Appellant's choice to testify was voluntary and that his Fifth Amendment right to remain silent was not violated. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

### I. Facts and Procedural History

In 1991, Appellant, Charles Michael Johnson, was arrested by Dallas police and indicted for possession of less than twenty-eight grams of cocaine with intent to deliver. After his arrest, Appellant was released on bond. When he failed, on three occasions, to appear in court to answer the charges against him, his bond was forfeited, and a warrant was issued for his arrest. Eighteen years later, Appellant was arrested in Florida and returned to Texas. Subsequently, a jury convicted him, and Appellant elected for the trial court to assess punishment. After the State rested, Appellant requested that the trial court take judicial notice of the pre-sentence investigative report (PSI).[1] He then rested his case. At that point, the following exchange took place:

> [TRIAL COURT]: Your client doesn't want to testify?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> [TRIAL COURT]: Is that right, sir?
>
> [DEFENSE COUNSEL]: If you want to testify, I will put you up there.
>
> [TRIAL COURT]: In all candor, I would kind of like to know what he's been doing for the last 18 years.

---

[1]In the punishment phase, a trial court may accept any evidence deemed relevant to sentencing, including a PSI. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). If there is a PSI, the trial court shall announce his decision as to punishment "after considering the report." TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(d). In addition, the trial court has a duty to allow the defendant to comment on inaccuracies in the report and has the discretion to hear testimony or other information concerning the report. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 9(e). Because a trial court considers a PSI before assessing punishment, and the contents of the report could bear on the trial court's final decision, it seems only logical the trial court is permitted to ask questions concerning the contents of the report, if they are relevant to sentencing. Further, Appellant specifically asked the court to take judicial notice of the contents of the PSI.

[DEFENSE COUNSEL]: Okay.

[TRIAL COURT]: Come to the front of the courtroom.

Appellant was sworn in and testified. On direct examination, he testified that, prior to his arrest in Florida, he had straightened out his life. He also stated that he was in a committed relationship and that he lived with his girlfriend and daughter. He also testified that he had remodeled houses in Florida as a subcontractor for more than seventeen years. On cross-examination by the State, Appellant claimed that he did not know warrants had been issued for his arrest. He also denied threatening the police officer with his gun, but he did admit to living under a false identity and using a false social-security number to obtain a job in Florida. He also testified that the substance he was arrested with in Dallas was not cocaine. Upon hearing this statement, the trial court interrupted to ask Appellant whether he was aware that the substance he possessed at the time of arrest had tested positive for cocaine. Appellant maintained that it was not cocaine. The trial court continued to question him about the drugs and other circumstances surrounding the incident, and in an attempt to explain how the substance tested positive for cocaine, Appellant alleged that the arresting officer is "a dirty cop." Then, the trial court excused Appellant, and the defense rested for a second time.

After closing arguments, but before the judge announced Appellant's sentence, the trial court stated,

> Okay. Well, this is obviously a very difficult case in that it's apparent to me
> that he has stayed out of trouble, essentially at least, in any realistic way. I

mean, driving with a license suspended is no big deal in the context of things, but on the other hand, I don't want to reward somebody for running, and I do believe that the defendant lied under oath, sir. I'm sorry. That's what I think.

The trial court then assessed punishment at ten years' confinement.

On appeal, Appellant argued, *inter alia*, that his trial was unfair because the trial court compelled him to testify at the punishment phase in violation of his Fifth Amendment right to silence. *Johnson v. State*, No. 05-09-00792-CR, 2011 WL 72197, at *1 (Tex. App.—Dallas Jan. 11, 2011) (mem. op.) (not designated for publication). The court of appeals held that Appellant did not knowingly, voluntarily, and intelligently waive his right to remain silent. *Id.* at *3. Because it also concluded that Appellant's failure to object did not waive his complaint for appellate review, it sustained Appellant's Sixth Amendment claim and remanded the case to the trial court for a new punishment hearing. *Id.*

We granted review to determine if the court of appeals correctly concluded that Appellant was improperly influenced to testify in violation of his Fifth Amendment right to remain silent.[2]

## II. Arguments of the Parties

### A. The State

The State first argues that regardless of whether Appellant actually invoked his

---

[2]The precise ground for review granted is, "Did the Court of Appeals err in determining that the trial court improperly influenced Appellant to testify in violation of his right to remain silent?"

right to silence, he waived that right when he knowingly, intelligently, and voluntarily took the stand in his own defense. The State cites *Chavez v. State*, 508 S.W.2d 384, 386 (Tex. Crim. App. 1974), for the proposition that a defendant may waive the privilege against self-incrimination by voluntarily taking the stand and becoming a witness.

The State also avers that it was not improper for the trial court to directly address Appellant after he rested his case; rather, the trial court "merely expressed his interest in hearing what Appellant had been doing" for the eighteen years since his arrest. The State argues that the real reason Appellant took the stand was to seek leniency in sentencing by presenting mitigating evidence showing that he had turned his life around but that, on cross-examination, Appellant voluntarily began to perjure himself by making false statements about his offense.

Moreover, the State avers that *Carroll v. State*, 68 S.W.3d 250, 253 (Tex. App.—Fort Worth 2002, no pet.), is distinguishable from Appellant's case. In *Carroll*, the State called the defendant to testify during the punishment phase, and her counsel asked the trial court if she "had to" testify. *Id.* at 252. The court replied, "Well, I think if you don't, it's going to reflect very seriously on the Court's decision here." *Id.* The defendant was then sworn, and she testified. The court of appeals held that the trial court "improperly coerced" her into testifying because it was unconstitutional to imply that an assertion of a defendant's right to not incriminate herself would be used against her. *Id.* at 253. The State argues that the comments at issue in *Carroll* are distinguishable from

the comments in Appellant's case. Specifically, in *Carroll*, the defendant was told that she would receive harsher punishment for exercising her constitutional right, whereas, in Appellant's case, the trial court wanted to hear mitigating evidence, had obvious reason to be concerned about what Appellant had been doing since fleeing Dallas eighteen years earlier, and never stated or implied that Appellant's failure to testify would be used against him.

The State contends that Appellant's case is more analogous to *Birdsong v. State*, 82 S.W.3d 538, 544 (Tex. App.—Austin 2002, no pet.). In that case, the defendant was called to the stand by the prosecution during the punishment phase. *Id.* at 541. The defendant's attorney cross-examined him and elicited mitigating evidence that the defendant had paid restitution, was willing to write apology letters to the victims, and would live with his father if released. *Id.* at 544. On appeal, the defendant argued that, by calling him to testify, the State violated his Fifth Amendment right against self-incrimination. *Id.* at 541. The court of appeals determined that the salient issue was whether the record showed that his punishment phase testimony was given knowingly, voluntarily, and intelligently. *Id.* at 544. The court also noted that the defendant was represented by counsel at the proceeding, there was no objection to calling the defendant as a witness or to any question the State asked, and defense counsel cross-examined the defendant and elicited mitigating evidence. *Id.* Consequently, the appellate court concluded that his waiver was knowing, intelligent, and voluntary. *Id.*

### B. Appellant

Appellant argues that he affirmatively invoked his right to remain silent; that he did not knowingly, intelligently, or voluntarily waive his right; and that, as a result, his testimony was compelled in contravention of the Fifth Amendment. Appellant also claims that *Chavez*, 508 S.W.2d at 385, is distinguishable because *Chavez* dealt with a defendant who voluntarily testified at his first trial, but complained that the State could not use those statements against him in his second trial. Thus, according to Appellant, *Chavez* is not instructive here because the issue at hand is whether Appellant was compelled to testify, not whether his testimony could be used against him at a subsequent proceeding.

Appellant also avers that his case is similar to *Carroll* and, thus, warrants the same outcome because he never waived his privilege against self-incrimination. Appellant contends that he, like the appellant in *Carroll*, was compelled to testify in contravention of his Fifth Amendment privilege to remain silent. *See Carroll*, 68 S.W.3d at 253. Thus, Appellant claims that his testimony cannot be viewed as a waiver of his privilege against self-incrimination because any waiver was given under penalty of punishment.

Appellant also argues that the result in *Birdsong* goes against the weight of the evidence. In that case, although the State admitted it was error to call the defendant to the stand, and the court held that a defendant need not affirmatively invoke his right to silence, it nonetheless concluded that the defendant knowingly, intelligently, and

voluntarily waived his right to remain silent. *Id.* at 544. Appellant also contends that key facts distinguish *Birdsong* from his case. For example, in *Birdsong* the defendant pled guilty, but here Appellant pled not guilty. Additionally, the defendant in *Birdsong* never stated that he did not want to testify, but Appellant affirmatively invoked his right to silence twice. Finally, Appellant notes that the court put great emphasis on the fact that the defendant failed to object to being called as a witness by the State, and he concludes that, had the defendant in *Birdsong* affirmatively invoked his privilege, the court of appeals would have reached a different conclusion.

Appellant also contends that *Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966), is most analogous to his case. In *Thomas*, before imposing a sentence, the judge asked the defendant if he wanted to make a statement. *Id.* at 944. The defendant then professed his innocence. *Id.* After the defendant made his statement, the judge told him that if he "came clean" he would take that into account in assessing his sentence. *Id.* The judge also told the defendant that if he failed to confess, that fact would also be taken into account. *Id.* The defendant chose not to testify and subsequently received the maximum sentence. *Id.* at 945. The Fifth Circuit vacated the defendant's conviction as an abuse of discretion because it held that the defendant was compelled to suffer an unconstitutional, judicially- imposed penalty. *Id.* at 947. Appellant argues that the facts of his case are more egregious than those in *Thomas*, and as such, a similar outcome is required in his case.

Appellant also contends that the exchange between himself and the trial court was so oppressive that it was more akin to the pressures of a police interrogation and that police questioning immediately following the invocation of a suspect's right to silence violates the Fifth Amendment. *See, e.g., Charles v. Smith*, 894 F.2d 718 (5th Cir. 1990); *Watson v. State*, 762 S.W.2d 591 (Tex. Crim. App. 1998); *United States v. Rambo*, 365 F.3d 906 (10th Cir. 2003).

Finally, Appellant argues that it is improper to consider the substance of his statements as a factor when determining whether he voluntarily testified because looking to the substance of the testimony (and its incriminating nature) is of no help in determining whether Appellant voluntarily took the stand before making the incriminating statements.

### III. The Fifth Amendment Right to Remain Silent

The Fifth Amendment in relevant part states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V; *see also Estelle v. Smith*, 451 U.S. 454, 463 (1981). To seek the protection of the Fifth Amendment, a defendant in a criminal case normally must affirmatively assert the privilege. *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984); *United States v. Monia*, 317 U.S. 424, 427 (1943). But, because the Fifth Amendment speaks of "compulsion," if a defendant fails to affirmatively assert the privilege, but nonetheless provides incriminating statements, it cannot be said that the person has been "compelled" to

provide evidence against himself. *Murphy*, 465 U.S. at 427. Thus, the general rule is that the privilege to avoid self-incrimination is ordinarily not self-executing.[3] *Id.* (quoting *Monia*, 317 U.S. at 427); *Chapman v. State*, 115 S.W.3d 1, 6 (Tex. Crim. App. 2003).

Just as a defendant can fail to invoke his Fifth Amendment privilege, a defendant can also voluntarily forfeit his Fifth Amendment privilege if he freely chooses to take the stand and make incriminating statements. *Murphy*, 465 U.S. at 427; *see Monia*, 317 U.S. at 427. This is true even if not done knowingly and intelligently. *Murphy*, 465 U.S. at 427-28; *Garner v. United States*, 424 U.S. 648, 654 n.9 (1976).

In addition, there are exceptions when a defendant need not affirmatively invoke his right to remain silent. *See Murphy*, 465 U.S. at 429-41. In these situations, the right is self-executing. *Id.* at 429. The exception at issue here is the "classic penalty situation" described by the Supreme Court in *Garner*, 424 U.S. at 661-63, and *Murphy*, 465 U.S. at 434. In a penalty case, a defendant is foreclosed from making a free decision to invoke his privilege to silence because he is faced with a new or additional penalty for exercising his constitutional right. *Murphy*, 465 U.S. at 434. In that situation, a defendant who fails to invoke his right to avoid self-incrimination may succumb to the pressure of the penalty rather than freely choosing to remain silent. *See Garner*, 424 U.S. at 661. Consequently,

---

[3]The Fifth Amendment privilege against self-incrimination under a *Marin* analysis is a forfeitable privilege. *See Marin v. State*, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993). This is true because any relinquishment of the privilege need not be expressly made, and a trial judge has no independent duty to implement a defendant's Fifth Amendment privilege. *Murphy*, 465 U.S. at 427; *see Marin*, 851 S.W.2d at 279.

the failure on the part of the defendant to affirmatively invoke his right to avoid self-incrimination is excused. *Murphy*, 465 U.S. at 434-35.

The issue here is not whether Appellant made a knowing, intelligent, and voluntary waiver of his privilege to remain silent. *See Murphy*, 465 U.S. at 427. The critical inquiry is whether Appellant voluntarily testified or whether Appellant was "coerced" to testify against his will. *Chapman*, 115 S.W.3d at 6; *see Murphy*, 465 U.S. at 435.

### IV. When is an accused's right to incriminate self-executing?

To determine if Appellant's Fifth Amendment privilege was self-executing, we look to *Murphy*, the leading authority on penalty cases. *Chapman*, 115 S.W.3d at 6. In *Murphy*, the appellant pled guilty to a charge of false imprisonment, and he was sentenced to sixteen months' confinement and three years of probation. *Murphy*, 465 U.S. at 422. The appellant was told that he must satisfy each condition of his probation and that if he failed to do so, revocation proceedings would be initiated against him. *Id.* One of those conditions required him to be truthful at meetings with his probation officer. *Id.* At a meeting with his probation officer, the appellant admitted that he had raped and murdered another person. *Id.* at 423-24. The Supreme Court held that the condition of probation requiring the appellant to be truthful did not present a penalty situation. *Murphy*, 465 U.S. at 439. In arriving at its conclusion, the Supreme Court relied upon two important facts: first, there was no evidence, direct or otherwise, that the incriminating statements were made because the appellant was threatened with revocation

of his probation; and second, the appellant's belief that his probation would be revoked if he did not make the incriminating statements was not reasonable because the State cannot carry out a threat to revoke probation in retaliation for invoking the privilege to remain silent. *Id.* at 437-38.

### V. Was Appellant's right to remain silent self-executing?

Here, as in *Murphy*, there is no direct record evidence that Appellant took the stand because he feared that the trial court would penalize him for remaining silent. The trial court never told Appellant he would receive a greater sentence if he chose not to testify. Rather, after Appellant rested during the penalty phase, the trial court asked defense counsel, "Your client doesn't want to testify?" The court later added, "In all candor, I would kind of like to know what he's been doing for the last 18 years." Furthermore, neither Appellant nor his counsel made any comment indicating that they believed if Appellant remained silent a greater punishment would be assessed. In fact, when the court asked Appellant whether he would be testifying, Appellant's counsel told him, "If you want to testify, I will put you up there." Thus, the record reveals no direct evidence to support Appellant's claim that he was placed in a penalty situation because there is no direct evidence that Appellant was confronted with a penalty. Black's Law Dictionary defines "penalty," in relevant part, as "[p]unishment imposed on a wrongdoer . . . ." BLACK'S LAW DICTIONARY 1153 (7th ed. 1999). Thus, unlike in this case, to be confronted with a penalty situation, there must be at least some record evidence that the

defendant in question was in fact confronted with a choice—be compelled to take the stand and testify or face "punishment" for invoking his right to remain silent.

The question then becomes whether Appellant was confronted with a penalty situation by implication. The first statement made by the trial cannot be reasonably interpreted as a threat to penalize Appellant if he did not testify. Black's Law Dictionary defines the word "threat" as "[a] communicated intent to inflict harm or loss on another . . . ," especially "one that might diminish a person's freedom to act voluntarily . . . ." BLACK'S LAW DICTIONARY 1489 (7th ed. 1999). After reviewing the record, it cannot be said that the first statement amounted to an implied "communicated intent to inflict harm" on Appellant if he chose to not testify. That statement is better characterized as an interrogatory typical of a trial court charged with exercising "reasonable control over the mode and order of interrogating witnesses and presenting evidence[,]"[4] and a court performing its duty under Article 37.07 of the Texas Code of Criminal Procedure to accept evidence offered "as to any matter the court deems relevant to sentencing . . . ."[5] TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1).

Turning to the court's second statement, when the trial court asked about what Appellant had been doing in the eighteen years between his arrests, two competing views

[4]Tex. R. Evid. 611(a).

[5]Under Article 37.07 of the Texas Code of Criminal Procedure, a judge is allowed to accept evidence on any matter the court deems relevant to sentencing, including the circumstances of the offense and his character. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1), (d); *see Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006).

have been advanced as to its implications. Appellant argues that the statement caused him to feel compelled to testify (to avoid being punished for remaining silent). In contrast, the State argues that the statement allowed Appellant an opportunity to help himself and that, like *Birdsong*, Appellant took that opportunity to attempt to show the court that he had reformed his ways and deserved a lesser sentence. We agree with the State that, based on the record, a reasonable person would perceive the second statement as a request to offer mitigating evidence rather than an implied threat of punishment.

This conclusion is supported by the procedural posture and record in this case. An inordinate amount of time passed between Appellant's 1991 arrest in Dallas and his arrest eighteen years later in Florida.[6] In addition, because this was the penalty phase, the court was accepting all evidence relevant to sentencing, and one type of relevant evidence in the penalty phase is mitigating evidence. *See Ellison*, 201 S.W.3d at 722; *see also Willingham v. State*, 897 S.W.2d 351, 358-59 (Tex. Crim. App. 1995). Further, Appellant's counsel emphasized the mitigating circumstances of Appellant's life since being arrested in Dallas. He pointed out that, although Appellant had been arrested for driving with a suspended license, "that's the worst that the State has been able to bring." He also stated that "whatever happened back in 1991, [Appellant] was able to straighten himself out, and he's had 17 years plus of working, raising a family . . . ."

---

[6]Appellant's counsel pointed this out when he said that "this case is a bit different" because "in most cases we are trying the case after - - you know, maybe eight months to a year after the events happen . . . ."

Moreover, the trial court's statement before announcing Appellant's sentence also supports the conclusion that the trial court was inquiring about mitigating evidence, not implying that Appellant would be punished for not testifying.  The trial court stated,

> Okay.  Well, this is obviously a very difficult case in that it's apparent to me that he has stayed out of trouble, essentially at least, in any realistic way.  I mean, driving with a license suspended is no big deal in the context of things, but on the other hand, I don't want to reward somebody for running, and I do believe that the defendant lied under oath, sir.  I'm sorry.  That's what I think.

This statement shows that the court was sympathetic to Appellant's case and was interested in imposing a lesser sentence based on mitigating circumstances following Appellant's arrest.  However, it also appears that the court felt unable to impose a lesser sentence, even in light of the mitigating evidence, because it found Appellant's testimony, in at least some respects, to be false.

And, we do agree with Appellant's argument that whether he did or did not perjure himself is irrelevant to our analysis and cannot be properly considered in a penalty-situation inquiry.  We think the substance of his testimony may be examined to determine whether Appellant had a basis for believing that, if he had invoked his right to silence, he would have been punished for asserting that right.  *Murphy*, 465 U.S. at 438.  For example, Appellant's testimony on cross-examination is some evidence that he was trying to offer mitigating evidence.  Also, the excerpts from the record show that Appellant spent the majority of his time on direct examination offering mitigating evidence.  Moreover, Appellant's continued denials of wrongdoing, even when vigorously cross-

examined by the State, strongly suggests that Appellant's will was not overborne when he took the stand. *Murphy*, 465 U.S. at 438. This conclusion is strengthened by the fact that Appellant continued to deny culpability even when the judge grew impatient with his answers and excused him from the stand. In short, Appellant's testimony does not support his contention that he was coerced into testifying.

The record in this case reveals that neither statement by the trial court amounted to a threat that Appellant would be penalized for exercising his constitutional right to silence. To the contrary, we believe that Appellant could not have reasonably believed that he was confronted with the choice either to be silent and be punished or to capitulate and give incriminating statements against his will. Instead, the record in this case shows that, like *Birdsong*, Appellant and his counsel perceived an opportunity to offer mitigating evidence in the hope of leniency at sentencing. *See Birdsong*, 82 S.W.3d at 544. We also note that Appellant invoked his right to remain silent in the guilt phase, and was thus aware of his right, and that Appellant lodged no objection to being called to the stand or to the questions asked. *See Murphy*, 465 U.S. at 437.

We hold that Appellant was not confronted with a penalty situation and that, as a result, he cannot now claim a violation of his Fifth Amendment privilege to remain silent.

## VI. Conclusion

Because Appellant was not confronted with the "classic penalty situation," he forfeited his Fifth Amendment right to remain silent when he voluntarily took the stand in

his own defense.  We reverse the judgment of the court of appeals and affirm the trial court's judgment.

Hervey, J.

Delivered: January 25, 2012

Publish