ORIGINAL

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

DEVON STIFF

V.

THE STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 12 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

AUG 14 2015

Abel Acosta, Clerk

## APPELLANTS PETITION FOR DISCRETIONARY REVIEW

Devon Stiff #1892905
Ware
1681 S. FM 3525
Colorado City, Texas
79512
Pro-se.

# LISTS OF PARTIES

APPELLANT
DEVON STIFF

APPELLEE
The STATE OF TEXAS

DEFENSE COUNSEL; AT MOTION to SUPPRESS:
William D Cox
1401 Elm Street Suite 3310
DALLAS, TEXAS 75202

At TRIAL:
Calvin Johnson
1700 Commerce Suite 540
Dallas Texas 75201

STATE's ATTORNEY At TRIAL
At MOTION to SURPPRESS: CAMERON SMITH
At TRIAL: TERRANCE Downs / Brooke GRONA-Rob
DALLAS COUNTY DISTRICT ATTORNEY's OFFICE
FRANK CROWLEY COURTS Building
133 N. RIVERFRONT Blvd., LB-2
DALLAS, TEXAS 75207-4399

ii

APPEALLANTS ATTORNEY ON APPEAL
Julie Woods
DALLAS COUNTY PUBIIC DEFENDER'S OFFICE
FRANK CRowley Courts Building
133 N. RIVERFRONT Blvd., LB-2
DALLAS, TEXAS 75207-4399

STATE'S ATTORNEY ON APPEAL
CRAIG Watkins CRIMINAL DISTRICT ATTORNEY
TARRA CUNNINGHAM
ASSISTANT DISTRICT ATTORNEY
FRANK CROWLEY COURTS BUILOING
133 N. RIVERFRONT BLVd., LB-19
DALLAS, TEXAS 75207-43099

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| LIST OF PARTIES | ii,iii |
| INDEX OF AUTHORITIES | iv |
| STATEMENT REGARDING ORAL ARGUMENT | 1. |
| STATEMENT OF CASE | |
| STATEMENT OF PROCEDUAL HISTORY | 2. |
| GROUNDS FOR REVIEW | |
| ARGUMENT | 3. |
| PRAYER FOR RELIEF | 7. |
| CERTIFICATE OF COMPLIANCE | |
| CERTIFICATE OF SERVICE | 8. |
| APPENDIX | 9. |

# INDEX OF AUTHORITIES

Cases      Pages

Balli v. STATE 530 S.W. 2d; 123,125,126; 1975 (Tex.Crim.App.) 3.

Bently v. STATE 535 S.W.2d; 651,652; 1976 (Tex. CRIM. App.) 3.

Davis v. STATE 378 S.W. 2d; 378,379; 1978 (Tex. CRIM. App.) 6.

Dickey v. STATE 552 S.W.2d; 467; 1977 (Tex. CRIM. App.) 3.

Segura v. STATE 826 S.W. 2d; 178,184 (Tex. App. DALLAS) 1992 4.

Sokolow v. U.S. 490 U.S. Ct. 1 (1989) 4.

TERRY V. OHIO 390 U.S. Ct 1 (1968) 4.

WADE V. STATE 661, 664; 2013 (Tex. Crim. App.) 4.

YORK V. STATE 342 S.W.3d 528, 536-538 (Tex. Crim. App. 2011) 4.

STATUTES

V.T.C.A 49.02 3.

CONSTITUTIONAL PROVISION
U.S. Const. amend IV 4.

RULES
Tex. R. App. P. 66.3 (a),(b),(c) and (d) 2.

MISCELLANEOUS
DART CODE OF CONDUCT § 2.02 (b) 5., 6.

IV

# STATEMENT OF ORAL ARGUMENT
Appellant waives oral argument.
# STATEMENT OF CASE

IN the instant offense the 363rd Judicial District court Dallas County, Texas Cause No. F-0619538-W denied Appellants motion to surpress. At trial Officer J. Stinson testified he Observed Appellant loitering 30 min. between 3 city bus stops; 100 and 200 block's S. Lamar and 700 Wood St. Stinson testified Appellant staggered as he walked to these location Suggesting the influence of intoxication and violation of Oart loitering policy. Stinson pulled along side the curb attempting to approach Appellant activated his over head lights and turned on his Spot light. Appellant started jogging at a slow pace, pulling a large black suitcase. Stinson yelled "Stop police". Appellant did not Comply, a short distance after Stinson and back up officer caught Appellant. Stinson stated he noticed Appellants pupils were dilated he had slurred speech thick toungue and Smelled of no alcohol. Stinson arrested appellant for public intoxication disorderly conduct and evadeing arrest/detention. Appellant refuse to say anything a search of Appellants person revealed no identifacation no open alcohol containers or drug paraphenilia. The officers searched the suitcase and discovered a Franzia Wine box with what appeared to be a Kilo of cocaine inside. Officer Stinson then transported Appellant to Dallas County Jail where Appellant was booked in for possesion with intent to deliver over 400 grams and evadeing arrest/detention.

6.

## STATEMENT OF PROCEDUAL HISTORY

On the 30th day of June 2015. In The Court of Appeals 5th District of Texas at Dallas. Concluded the trial Court did not err in denying Appellants motion to suppress. Appellant recived by Certified mail on Jully 10, 2015. The Court of Appeals Opinion, as a result no motion for rehearing was filed.

## GROUNDS FOR REVIEW

1.) Motion to Surpress; Abuse of Discretion by trial court Judges application of law of search and seizure to the facts. In The Court of Appeals for the 5th District of Texas at Dallas Memorandom of opinion pages 4-7. In accordance to T.R.A.P Rule 66.3 (a),(b) and (c)

2.) Motion to Surpress Search and Seizure Warrantless arrest reasonable suspicion. An Officer must do more than simply label a behavior as suspicious to make it so. Given the Circumstance an officer must articulate why a particular behavior logicly demonstrate's Criminal activity at first sight. Page 2,6. In The Court of Appeals for the 5th District of Texas at Dallas Memorandom of opinion. In accordance to T.R.A.P Rule 66.3 (a),(b), and (c)

3.) Motion to Surpress; legal Suffincey evidence Public Intoxication, according to V.T.C.A Penalcode 49.02. arresting officer must have reason to believe suspect is danger to himself or others. Page 5-7. In The Court of Appeals for the 5th District of Texas at Dallas Memorandom of opinion. In accordance to T.R.A.P Rule 66.3 (a),(b),(c) and (d)

2.

# ARGUMENT

Appellant argues the court of appeals misconstrued this court's cases by holding that officers stinson had reasonable suspicion Public intoxication had been committed. V.T.C.A penal code 49.02 state's the arresting officer must have reason to believe the suspect is intoxicated "to the degree he may endanger himself or another." The record will show stinson obeservation of staggered walking, slurred speach and bloodshot eyes or dilated pupils is what arrest was based upon. It should be noted that streets in this case are actually sidewalks were the Dart Bus stops are located. Several question arise; Can unsteady movement, bloodshot eyes or swollen or expanded pupils and indistinctive Speech infer potential harm to oneself or another? Did the officer use investigative means least intrusive to verify or dispell his suspicion before makeing arrest search and seizure? What exigencies existed for stinson to go beyond a investigative dettention to full blown arrest? Previous cases have demonstrated legal sufficency of eviedence of public intoxication with definitive observation of the crime being committed. In the following cases it was held; Balli V. STATE 530 S.W.2d 123, 125, 126; 1975 (Tex.Crim.App) Balli; "Smelled of strong alcohol, noticebly swayed walking in the middle of the street almost falling."

Bentley V. STATE 535 S.W.2d 651, 652; 1976 (Tex.Crim.App) Bently; "Smelled of strong alcohol, eyes blood shot, speech slurred beyond understanding, needed a desk, wall and officer for support to stand and walk". Dickey V. STATE 552 S.W.2d 467; 1977 (Tex.Crim.App.) Dickey; "was found intoxicated asleep in front of a loung @ 2:30 am, Speech Slurring and wobbling when he walked, with essence of alcohol on his body".

3.

Segura v. STATE 826 S.W. 2d 178, 184 (Tex. App. Dallas) 1992; "Witnesses testified Segura ran into a parked pickup truck", officer testified Segura had alcohol odor on his breath, speech slurred and had trouble steading himself."; York v. STATE 342 S.W. 3d 528, 536-538, (Texas. Crim. App. 2011) York, Was sleep @ 3:30 am In his car engine running Partially parked on the sidewalk near door of store. Officer approach York, smelled no alcohol asked him about his whereabouts and York was confused of his location. Officer conducted a search of York's person and discovered a controlled substance

In the instant offense Officer Stinson's Case narrative States. Appellant yelled in a loud Voice "Why are you fucking with me, Im calling my lawyer." This statement is the opposite of indistinct, imperfectedly articulated, lack of sharpness and sensibil intellect, slurred speech would suggest.

In United State v. Sokolow 490 U.S. 1 (1989) officers detained Sokolow upon suspicion of drug traficing. A K-9 unit was brought In as part of the investigation. The K-9 alerted officer of possible presence of Controlled substance. Officers then acquired a Search Warrant to inspect Sokolow's luggage. The totality of circumstance led officers to detain Sokolow implore less intrusive means to verify their suspicion. Unilike this case the officer followed the provision Set fourth by the 4th amendment of the United States Constitution and Terry v. Ohio 392 U.S. 1 (1968) that protects a person from unreasonable Searches and seizures.

Furthermore the Supreme Court and other courts have held a person refusal to cooperate with a police request during a Consenual encounter by itself cannot be basis for detention or terry frisk." Wade v. STATE 422 S.W. 3d 661, 664; 2013 (Tex. Crim. App.)

4.

The loud utterance of profanity caused no riot or civil disorder or assualt on anyone. The record is silient drug or alcohol intoxication existed, leading one to believe appellant was in danger and needed asistance.

Finally along with stinson observation of Appellants alleged staggered walking, loitering was included as the basis for stopping Appellant. Loitering is defined as a criminal offense of remaining in a certain place for no apparent reason. The appellant was scene allegedly for thrity minutes at three different bus stops and not board any buses. Considering the distance between stops the time it takes to reach each one, appellant spent less than ten minutes at each one. Rational inference can imply a person is looking for particular Bus service, departure and arival schedual etc.. Average time of departure and arival are thrity minutes on week days and one hour on weekends. Note February 15 2006 was a friday or saturday. Officer stinson testified DART has a no loitering policy, one was never introduce at motion to Surpress hearing or trial. On direct appeal appellant noted in appeal brief Dart's code of conduct. DARTS code of conduct does not mentioned loitering as a prohibited act. One of the prohibited acts listed is the unauthorize use of DART facility or property. DART Code Conduct 2.02(b) provide that if a person "violates one or more of these regulation he may be warned and or ordered to leave DART. No record or Testimony introduced appellant was warned of any violation.

5.

The code specificly states if a person refuses to leave after being ask to, the situation may be handled by DART police or other law enforcement. DART CODE OF Conduct 2.02 (b).

In Davis v. STATE 576 S.W.2d 378; 1978 (Tex. Crim. App.) Davis was observed loitering most of the morning around a store on a busy street. A complaint was made to harris county sheriff. Deputy sheriff responded; observed davis who fit the description of complaint. Deputy testified he pulled over got out his car and engaged davis who appeared somewhat unsteady on his feet and slurred his words. There was no alcohol on his breath. The officer concluded he was intoxicated by unknown substance and decided to arrest Davis for public intoxication. The officer noticed a fist size bulge in Davis pocket. The officer ordered Davis to produce it and was later proved to be marihuana. Like the case at bar, the State in Davis Supra asserted the marihuana was discovered as the result of a search incident to arrest for public intoxication.

This court in the opinion of Davis supra noted "there was not probable cause to arrest for public intoxication", "There was no indication that he was in any way a danger to himself or any one else".

Officer Stinson testified after arresting appellant for public intoxication, disorderly conduct and evadeing arrest. A search incident to Arrest was conducted which yielded a substance later proven to be cocaine.

6.

## PRAYER FOR RELIEF

The decision made by the Court of Appeals to rule against Appellant's first issue on motion to suppress is in direct conflict with decision made by this Court on the same issue. Wherefore Appellant prays the Court of criminal Appeals Reverse the decision made by the Court of Appeals.

APPELLANT
DEVON STIFF
1681 S. FM 3525
Colorado City TEXAS
75219

*Devon Stiff*
DEVON STIFF
PRO-SE APPELLANT

## CERTIFICATE OF COMPLIANCE

The undersigned certifies this petition complies with Texas Rule of Appellate Procedure 66 Through 70.

*Devon Stiff*
DEVON STIFF

7.

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2015 a true copy of this document has been served on Tara Cunningham, Assistant District Attorney 133. N. Riverfront Boulevard, LB 19, Dallas, Texas 75207 by U.S. Postal Service certified mail and the clerk of CRIMINAL APPEALS P.O. Box 12308, Austin, Texas 78711

_Devon Stiff_
DEVON STIFF

8.

Affirmed as Modified; Opinion Filed June 30, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01471-CR

### DEVON STIFF, Appellant
### V.
### THE STATE OF TEXAS, Appellee

## On Appeal from the 363rd Judicial District Court
## Dallas County, Texas
## Trial Court Cause No. F-0619538-W

## MEMORANDUM OPINION
Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

Following a plea of not guilty, Devon Stiff ("Appellant") was convicted by a jury of possession with intent to deliver a controlled substance, to wit: cocaine, in an amount by aggregate weight, including any adulterants or dilutants, of 400 grams or more. The trial court assessed punishment at 40 years' confinement.

Appellant asserts the following points in three issues: (1) the trial court erred in denying Appellant's motion to suppress; (2) the trial court compelled Appellant to testify in violation of his rights under the Texas Constitution and the Fifth Amendment; and (3) this Court should reform the judgment to reflect that the trial court assessed punishment in this case.

For the reasons below, we decide against Appellant on his first three issues. We decide in favor of Appellant on his fourth issue, and we modify the judgment to reflect that the trial court assessed punishment. We affirm the judgment as modified. *See* TEX. R. APP. P. 43.2(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joseph Stinson is a certified peace officer who has worked as a police officer for Dallas Area Rapid Transit ("DART") since 2000. At approximately 8:00 p.m. on February 15, 2006, Stinson was on patrol in the central business district in downtown Dallas when he noticed Appellant "had been loitering at numerous bus stops around [the] Greyhound Bus Station" for approximately thirty minutes without making any effort to board a bus, approach the ticket window, or use any DART services. During this time, several buses arrived, dropped off or picked up passengers, and departed. Stinson also noticed that Appellant was "staggering as he was walking and kind of stumbling a little bit as if he was intoxicated."

According to Stinson, DART has a no-loitering policy "to deter crime," including "the movement of narcotics." His observations led him to believe that Appellant was loitering, intoxicated in public, sick, or in need of assistance. So, Stinson attempted to make contact with Appellant. Stinson was wearing "full uniform" and driving a "marked squad car that night." He "pulled up behind [Appellant]" and "activated [his] emergency lights on [his] police car." As he was getting out of the vehicle, Appellant "took off running" while "dragging and pulling [a large nylon zipper] suitcase behind him." Stinson "instructed [Appellant] several times to stop, police, stop," but Appellant did not comply. Then, Stinson followed Appellant in his police car for approximately fifty feet until Appellant stopped. Upon approaching Appellant, Stinson observed that Appellant seemed "a little agitated," "his speech was slurred, his eyes were bloodshot, and his movements were very slow." Based on his experience and these observations, Stinson arrested Appellant for evading detention, public intoxication, and disorderly conduct. Once

–2–

Appellant was in custody, Stinson and his "backup officers" searched Appellant and his suitcase. In the suitcase, the officers found $6,000 in cash, "a brick of cocaine," which is "a kilo of [powder] cocaine," and "several cream-colored rocks that's commonly crack cocaine."

After Appellant was charged with possession with intent to deliver a controlled substance, to wit: cocaine, in an amount by aggregate weight, including any adulterants or dilutants, of 400 grams or more, he filed a motion to suppress the evidence obtained as a result of his detention and arrest. Appellant contended that he was "arrested without lawful warrant, probable cause or other lawful authority." After a hearing, the trial court denied the motion.

On October 9, 2013, after a trial on the merits, the jury returned a verdict of guilty. Appellant elected to have the trial court assess punishment. Appellant did not testify during the punishment phase of trial. After the State and the Appellant rested in the punishment phase, the following exchange took place:

> THE COURT: Because you have been unwilling to testify, which is your right. I'm not criticizing you for that. It makes it difficult for me to figure out who you really are and what's best for you under the facts of this particular case. So before I pronounce sentence on you, I want you to explain to me, if you want to, or if you feel you have something you want to say to me, I'm gonna give you that opportunity to do so. If you want to do that, stand up and talk to me.
>
> THE DEFENDANT: Yes, sir. At this time one thing I want to say is that, you know, I did turn myself in in January 2012. . . . I would like the opportunity to be given a chance to redeem myself. I thank you for the opportunity to talk to you, even though I have exercised my right not to make any testimony today. But, you know, at this time that's about all I have to say.
>
> THE COURT: That is your right. I'm not holding that against you in any way at all. Going through this, is it my understanding — well let me ask you. How many children do you have?

Appellant answered that question and several other questions by the trial court. Then, the trial court assessed punishment at 40 years' confinement.

## II.  MOTION TO SUPPRESS

In issue one, Appellant contends the trial court erred in denying his motion to suppress the evidence obtained as a result of his detention and arrest because "Stinson did not have reasonable suspicion to detain Appellant."

*A. Standard of Review*

We review a motion to suppress under a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). "First, the courts must give 'almost total deference to a trial court's determination of the historical facts that the record supports,' and second, the courts review de novo the trial court's application of the law to facts, which do not turn on credibility and demeanor." *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013) (quoting *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)). "Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed de novo on appeal." *Kerwick*, 393 S.W.3d at 273. "When the trial court does not issue findings of fact, as here, findings that support the trial court's ruling are implied if the evidence, viewed in a light most favorable to the ruling, supports those findings." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

*B. Applicable Law*

"The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion." *Kerwick*, 393 S.W.3d at 273. "'[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further.'" *Id.* (quoting *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004)). "Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those

facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.* The reasonable suspicion test "is an objective standard that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). "The standard also looks to the totality of the circumstances," *id.*, and "reasonable suspicion can exist even if the conduct is 'as consistent with innocent activity as with criminal activity,'" *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011).

"A person commits the offense of public intoxication if he 'appears in a public place while intoxicated to the degree that the person may endanger the person or another.'" *Id.* (quoting TEX. PENAL CODE ANN. § 49.02(a) (West 2011)). "The essential element of the offense is that the individual must be intoxicated to the extent that he 'may' endanger himself or another. Proof of 'potential' danger either to the accused or others is enough to show the essential element." *Segura v. State*, 826 S.W.2d 178, 184 (Tex. App.—Dallas 1992, pet. ref'd) (citations omitted). "'Public place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE ANN. § 1.07(a)(40) (West 2011).

*C. Application of Law to Facts*

Appellant asserts that Stinson did not have reasonable suspicion to detain him because his behavior prior to the stop was not "criminal activity" and Stinson did not provide articulable facts indicating that Appellant was intoxicated or a danger to himself or others. The State responds that Stinson had reasonable suspicion for the stop because "it was reasonable to believe

that Appellant may be engaged in the crime of public intoxication based on the totality of Appellant's behavior and the circumstances."

In this case, the trial court denied Appellant's motion to suppress without issuing any findings of fact or conclusions of law, so we will imply the necessary fact findings that would support the trial court's ruling if the evidence, when viewed in the light most favorable to the ruling, supports these fact findings. *See Turrubiate*, 399 S.W.3d at 150. Stinson testified as follows: (1) Appellant stood at three or four different bus stops in downtown Dallas for over thirty minutes "at nighttime" without boarding any of the buses that arrived and departed; (2) Appellant did not greet anyone at the bus stops or approach the ticket counter; (3) Appellant was "staggering" and "stumbling" as he walked, which suggested to Stinson that Appellant may be intoxicated or in need of assistance; and (4) DART has a no-loitering policy "to deter crime." Appellant appeared to be loitering at multiple bus stops and "staggered" or "stumbled" as he walked on the public streets in downtown Dallas at night. This constituted sufficient, articulable facts that would justify an officer's reasonable suspicion that Appellant was engaged in the criminal offense of public intoxication. *See Dixon v. State*, 187 S.W.3d 767, 769 (Tex. App.—Dallas 2006, no pet.) (concluding that the circumstances "would justify an officer to reasonably believe that appellant engaged in the criminal offense of public intoxication" when "appellant was staggering alone down a public street after midnight" ); *see also Miranda v. State*, No. 04-09-00779-CR, 2010 WL 4008439, at *2 (Tex. App.—San Antonio Oct. 13, 2010, no pet.) (mem. op., not designated for publication) (concluding officer had reasonable suspicion to detain appellant when he observed her "staggering and swaying as she walked down a sidewalk at a major intersection in San Antonio" at night in an area known for drugs and prostitution). Therefore, Stinson was permitted to briefly detain Appellant to investigate further. *See Balli v. State*, 530 S.W.2d 123, 125–26 (Tex. Crim. App. 1975), *overruled on other grounds by*

–6–

*Chudleigh v. State*, 540 S.W.2d 314, 319 (Tex. Crim. App. 1976) (concluding that "appropriate circumstances" for a brief investigative stop existed when appellant "swayed noticeably" as he walked in the middle of a public street after dark); *Miranda*, 2010 WL 4008439, at *2; *Dixon*, 187 S.W.3d at 769. Contrary to Appellant's argument, the fact that these circumstances may also be consistent with innocent activity does not preclude a finding of reasonable suspicion. *See York*, 342 S.W.3d at 536. Accordingly, we conclude the trial court did not err in denying Appellant's motion to suppress. We decide Appellant's first issue against him.

## III. RIGHT AGAINST SELF-INCRIMINATION

In his second and third issues, Appellant asserts that "the trial court compelled [Appellant] to testify during the punishment phase of trial in violation of [his] right to not testify" under the Fifth Amendment and the Texas Constitution. The State responds that Appellant "forfeited his right to remain silent when he voluntarily testified in his own defense."

### A. Standard of Review

We review de novo whether a defendant voluntarily testified or whether he was coerced to testify against his will. *See Minnesota v. Murphy*, 465 U.S. 420, 434–39 (1984) (reviewing the issue without deference to the trial court); *Johnson v. State*, 357 S.W.3d 653, 657 (Tex. Crim. App. 2012) (same); *Chapman v. State*, 115 S.W.3d 1, 6–11 (Tex. Crim. App. 2003) (same).

### B. Applicable Law

Both the Fifth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution "prohibit compelling a defendant to testify against himself in a criminal proceeding." *Birdsong v. State*, 82 S.W.3d 538, 541 (Tex. App.—Austin 2002, no pet.); *see* U.S. CONST. amend V; TEX. CONST. art. I, § 10. The privilege against self-incrimination applies during the punishment phase of trial. *Mitchell v. United States*, 526 U.S. 314, 325–27 (1999); *Estelle v. Smith*, 451 U.S. 454, 462–63 (1981) ("Any effort by the State to compel [the

—7—

defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.").

"To seek the protection of the Fifth Amendment, a defendant in a criminal case normally must affirmatively assert the privilege." *Johnson*, 357 S.W.3d at 657. "[I]f a defendant fails to affirmatively assert the privilege, but nonetheless provides incriminating statements, it cannot be said that the person has been 'compelled' to provide evidence against himself." *Id.* (citing *Murphy*, 465 U.S. at 427). "Thus, the general rule is that the privilege to avoid self-incrimination is ordinarily not self-executing." *Id.* "Just as a defendant can fail to invoke his Fifth Amendment privilege, a defendant can also voluntarily forfeit his Fifth Amendment privilege if he freely chooses to take the stand and make incriminating statements." *Id.* at 658.

One exception to the general rule that a defendant must affirmatively invoke his right to remain silent is the "classic penalty situation." *Johnson*, 357 S.W.3d at 658 (citing *Murphy*, 465 U.S. at 434; *Garner*, 424 U.S. 648, 661–63 (1976)). In a "penalty situation," "the defendant is foreclosed from making a free decision to invoke his privilege to silence because he is faced with a new or additional penalty for exercising his constitutional right." *Id.* at 658–59. When confronted with a "penalty situation," a defendant "may succumb to the pressure of the penalty rather than freely choosing to remain silent," so "the failure on the part of the defendant to affirmatively invoke his right to avoid self-incrimination is excused." *Id.* Thus, in a "penalty situation," the right to remain silent is self-executing. *Id.*

When determining whether a defendant's right to remain silent was self-executing, the issue "is not whether [the defendant] made a knowing, intelligent, and voluntary waiver of his privilege to remain silent. The critical inquiry is whether [the defendant] voluntarily testified or whether [the defendant] was 'coerced' to testify against his will." *Id.* (citation omitted). We first review the record for evidence that the incriminating statements were made because the

defendant was expressly threatened with a penalty for remaining silent. *See Johnson*, 357 S.W.3d at 658–59; *see also Murphy*, 465 U.S. at 435, 437–38. Second, we determine whether the defendant "was confronted with a penalty situation by implication," such that the defendant could have reasonably believed he was being threatened with a penalty for remaining silent. *See Johnson*, 357 S.W.3d at 658–59; *see also Murphy*, 465 U.S. at 435, 437–38.

### C. Application of the Law to the Facts

Appellant contends that the trial "judge's words manifested a clear message that Appellant must testify before the court would consider a less harsh sentence in this case." In response, the State asserts that "[t]he trial court gave Appellant an opportunity to offer mitigating evidence" and Appellant voluntarily testified.

The Court of Criminal Appeals recently addressed a similar situation. *See Johnson*, 357 S.W.3d at 654–57. In *Johnson*, after both sides had rested in the punishment phase of trial, the following exchange took place:

[TRIAL COURT]: Your client doesn't want to testify?

[DEFENSE COUNSEL]: No, Your Honor.

[TRIAL COURT]: Is that right?

[DEFENSE COUNSEL]: If you want to testify, I will put you up there.

[TRIAL COURT]: In all candor, I would kind of like to know what he's been doing for the last 18 years.

[DEFENSE COUNSEL]: Okay.

[TRIAL COURT]: Come to the front of the courtroom.

*Id.* at 654. The appellant was then sworn in and testified. During cross examination, the trial court interrupted and asked the appellant a series of questions. *Id.* On appeal, the appellant argued he had affirmatively asserted his right to remain silent and was compelled to testify in

–9–

violation of the Fifth Amendment. *Id.* at 656–57. Based on this record, the Court of Criminal Appeals concluded that

> Appellant could not have reasonably believed he was confronted with the choice either to be silent and be punished or to capitulate and give incriminating statements against his will. Instead, the record in this case shows that, like *Birdsong*, Appellant and his counsel perceived the opportunity to offer mitigating evidence in the hope of leniency at sentencing.

*Id.* at 661 (citing *Birdsong*, 82 S.W.3d at 544).

In the case before us, the trial court did not tell Appellant that he would receive a greater sentence if he chose not to testify, and neither Appellant nor his counsel made any comment or objection indicating that they believed if Appellant remained silent a greater punishment would be assessed. *See Johnson*, 357 S.W.3d at 659. We conclude the record does not show that Appellant was expressly placed in a "penalty situation" because there is no direct evidence that Appellant was confronted with a penalty. *See id.*

Next, we must determine whether Appellant "was confronted with a penalty situation by implication." *See id.* After explaining that Appellant's refusal to testify "ma[de] it difficult for [the trial court] to figure out who you [Appellant] really are and what's best for you," the trial court stated, "if you [Appellant] have something you want to say to me, I'm gonna give you the opportunity to do so." Appellant replied, "Yes, sir" and thanked the trial court "for the opportunity to talk to [it], even though I have exercised my right not to make any testimony today."

The trial court admonished Appellant regarding his right to remain silent and gave Appellant the option to testify or not. The record shows that Appellant understood he had a right to remain silent and that neither he nor his counsel made any objections before he testified. *See id.* at 661; *see also Birdsong*, 82 S.W.3d at 544 (concluding appellant was not compelled to testify, but rather voluntarily testified when the appellant and his counsel did not object to

appellant being called as a witness, appellant "answered each question openly, freely, and without hesitation," and the record reflected "a punishment-hearing strategy of seeking the district court's leniency"). Further, none of the statements by the trial court amounted to a threat that Appellant would be penalized if he exercised his right to remain silent. *See Johnson*, 357 S.W.3d at 660–61. Based on the record, a reasonable person would perceive the trial court's statements as a request to offer mitigating evidence rather than an implied threat of punishment. *See id.* at 659–61. Appellant could not have reasonably interpreted the trial court's statements as "a threat to penalize Appellant if he did not testify." *See id.*

We conclude that Appellant "could not have reasonably believed that he was confronted with the choice either to be silent and be punished or to capitulate and give incriminating statements against his will." *See id.* We decide against Appellant on his second and third issues.

## IV. MODIFICATION OF JUDGMENT

In his fourth issue, Appellant asks this Court to modify the judgment in this case to reflect that the trial court assessed punishment. The judgment currently states that punishment was assessed by the jury. The State supports this modification.

### A. Applicable Law

"This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so." *Estrada v. State*, 334 S.W.3d 57, 63 (Tex. App.—Dallas 2009, no pet.); *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). "The authority of an appellate court to reform an incorrect judgment is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

*B. Application of the Law to the Facts*

The first page of the trial court's judgment reflects that punishment was assessed by the jury. However, the record shows that the trial court assessed punishment in this case. After the jury returned a verdict of guilty, the trial court dismissed the jury from service. At the conclusion of the punishment phase of trial, the trial court assessed punishment of forty years' confinement. Furthermore, the second page of the judgment reflects that Appellant "elected to have the Court assess punishment" and that the court assessed the punishment as indicated on the first page of the judgment. Because the record unambiguously indicates the trial court assessed punishment, we modify the judgment to correct the error. Accordingly, we decide Appellant's fourth issue in his favor.

## V. CONCLUSION

The trial court did not err in denying Appellant's motion to suppress, and Appellant was not compelled to testify. We modify the judgment to reflect that the trial court, not the jury, assessed punishment in this case. We affirm the judgment as modified. *See* TEX. R. APP. P. 43.2(b).

/Douglas S. Lang/

DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131471F.U05

−12−



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DEVON STIFF, Appellant

No. 05-13-01471-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-0619538-W.
Opinion delivered by Justice Lang. Justices Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that the trial court, not the jury, assessed punishment in this case.

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 30th day of June, 2015.



first class

U.S. POSTAGE
PAID
COLORADO CITY, TX
79512
JUL 28, 15
AMOUNT
$0.00
R2305E124371-07

78711

1000

UNITED STATES
POSTAL SERVICE

7014 2120 0003 5601 0240

Devon Stiff 45780
Wark
16&1 SFM 3525
Colorado City, Texas
79512

Clerk of the
Court of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin, Texas
78711

Legal