

# NUMBER 13-15-00022-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

OFELIA LARIOS,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

---

## On appeal from the 139th District Court
## of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Rodriguez

A jury found appellant Ofelia Larios guilty of possession of marijuana in an amount of fifty pounds or less but more than five pounds, a felony of the third degree. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (West, Westlaw through 2015 R.S.). The trial court assessed Larios' sentence at five years, suspended for five years of community supervision.

Larios identifies two issues on appeal. However, because her first issue involves

two separate grounds that touch upon distinct areas of law, we construe her appeal as raising three issues: (1) sufficiency of the evidence, (2) impermissible jury argument in violation of the right against self-incrimination, and (3) denial of the right to a public trial. We affirm.

## I. BACKGROUND

On January 9, 2014, Larios was stopped on her way into Texas from Mexico by a Customs Border Protection Officer named Roman Garay. At trial, Officer Garay testified that during routine questioning at the Hidalgo County Port of Entry, he became suspicious when Larios claimed she had been in Mexico for only one day, but customs records and other circumstances showed she had been there longer. Garay also testified that customs officers are trained to scrutinize certain types of vehicles because of their common use in drug trafficking. Larios was driving such a vehicle. This led Garay to conduct a basic search of Larios' van. Garay first examined the passenger-side glove compartment and discovered several packages of marijuana concealed behind the van's glove compartment. No odor was apparent. Larios was silent when the officer opened the glove compartment. Garay testified that he asked Larios to step out of the car, and another officer, Veronica Lopez Ramirez, attended to Larios while Garay continued searching the vehicle. During this time, Larios answered the officer's questions, stating that she was the only person who drove the vehicle and that she had owned the vehicle for roughly a year. The investigating officers testified that throughout this process, Larios remained calm and did not exhibit any surprise at the discovery of the marijuana or her subsequent arrest.

2

Officer Ramirez testified that after Larios' arrest, a pat-down revealed that Larios had a little over $4,000 and 5,000 pesos on her person. Larios explained that the money was from a business she owned. Later, a closer inspection of the vehicle revealed that there were still more packages of marijuana carefully concealed behind the center console. When added to the packages behind the glove compartment, the searches yielded a total weight of 4.12 kilograms—roughly 9 pounds—of marijuana (together, the "2014 marijuana").

Customs and border patrol records showed that the van had crossed the U.S.-Mexico border forty-four times during the period Larios owned it. These records also showed that this same vehicle had been indicated in an unconnected narcotics arrest in June of 2012, when a man named Juan Perales was found to have sixteen pounds of marijuana concealed in a false floor in the van. Larios and her son had purchased the van at an auction shortly after it was seized in Perales' arrest.

At the trial of the matter, one of the defense's main theories was that this marijuana was a remnant from the arrest of Juan Perales. The defense argued that the authorities had simply overlooked the 2014 marijuana following the Perales arrest, and that it had remained in the vehicle, undiscovered, in the two years leading up to Larios' arrest. However, the State introduced testimony that the 2014 marijuana was fresh and green, which is not characteristic of two-year-old marijuana. The State's evidence showed that the 2014 packages differed from the packages discovered in 2012; the 2014 packages were larger, made with a different press, using different materials, and bundled in a different fashion. The State also introduced testimony that following Perales' arrest in

2012, investigators had generally scoured the vehicle and had been at a good vantage point to discover any marijuana hidden behind the glove compartment, but had found none. By comparison, Officer Garay discovered the 2014 marijuana in the first place he looked. Finally, the State argued that, given the evidence that the vehicle had crossed the border over forty times since Larios owned it, a drug-sniffing dog would have likely detected the narcotics sooner if they had been present the whole time.

At the conclusion of the trial, the jury returned a verdict of guilty. The trial court rendered a written judgment in accordance with the jury verdict and the court's sentencing pronouncements. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In her first issue, Larios complains that the evidence is insufficient to support her conviction.

### A. Standard of Review

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex.

4

Crim. App. 1993); *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). We will not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (en banc).

### B.      Applicable Law & Analysis

To prove unlawful possession of a controlled substance, the State has the burden of showing that the defendant knowingly exercised control, management, or care over the substance, and that the accused knew the substance possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc). The evidence, whether direct or circumstantial, must affirmatively link the defendant to the drug so as to establish that the defendant's connection with the drug was more than happenstance. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). This affirmative links rule protects the innocent bystander from conviction merely because of his fortuitous proximity to someone else's drugs. *Id.* Thus, mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control. *Id.* But where presence and proximity are reinforced with other indicators of possession (affirmative links), the combined force may well be sufficient to establish a possession offense beyond a reasonable doubt. *Id.*; *see Brown*, 911 S.W.2d at 747. It is not the number of links that is dispositive, but rather the combined logical force of all of the evidence, direct and circumstantial, that links the defendant to the drugs. *Evans*, 202 S.W.3d at 161.

Texas courts have recognized the following non-exclusive list of possible

5

affirmative links:

1. Whether the contraband was in plain view or recovered from an enclosed place;

2. The accused was the owner of the premises or had the right to possess the place where the contraband was found, or the owner or driver of the automobile in which the contraband was found;

3. The accused was found with a large amount of cash;

4. The contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting;

5. The contraband was found in close proximity to the accused;

6. A strong residual odor of the contraband was present;

7. The accused possessed other contraband when arrested;

8. Paraphernalia to use the contraband was in view, or found on the accused;

9. The physical condition of the accused indicated recent consumption of the contraband in question;

10. Conduct by the accused indicated consciousness of guilt;

11. The accused attempted to flee;

12. The accused made furtive gestures;

13. The accused had a special connection to the contraband;

14. The occupants of the premises gave conflicting statements about relevant matters;

15. The accused made incriminating statements connecting himself to the contraband;

16. The quantity of the contraband; and,

17. The accused was observed in a suspicious area under suspicious circumstances.

*Jenkins v. State*, 76 S.W.3d 709, 712–13 (Tex. App.—Corpus Christi 2002, pet. ref'd); *see also Evans*, 202 S.W.3d at 162 n.12.

Here, there is ample evidence to affirmatively link Larios to the drugs discovered in her vehicle. Larios gave a conflicting statement that aroused suspicion; she claimed that she had been in Mexico for only one day, but records suggested otherwise. Larios was found to have a considerable sum of money in her pockets and a sizeable quantity of marijuana that had been freshly packed and concealed just a few feet from her. Larios drove a model of vehicle known to be frequently used in trafficking operations, which only she had access to or used. Customs and border patrol records showed that this vehicle had made over forty crossings to Mexico in roughly the last year. Her only explanation for the presence of the drugs—that they were a leftover from a prior, unrelated trafficking operation—was thoroughly rebutted by the State. When authorities discovered the marijuana, Larios exhibited no signs of surprise. Based on the cumulative force of this evidence, a rational juror could conclude beyond a reasonable doubt that Larios knowingly possessed the marijuana in her vehicle. *See Adames*, 353 S.W.3d at 860.

To counter this evidence, Larios stresses the fact that several of the standard affirmative links were absent. However, the absence of various links does not negate the links that are present. *Lair v. State*, 265 S.W.3d 580, 588 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Moreover, these absent links were subject to conflicting inferences. The absence of residual odor or paraphernalia, the lack of incriminating statements or attempts to flee: a jury was free to interpret the absence of these links either as signs of innocence or simply as signs that Larios was careful and collected in the way

7

she pursued her task. The jury believed the latter. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *See Burrell v. State*, 445 S.W.3d 761, 764 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

Larios also urges the Court to revisit other conflicting evidence in the case. It is true that Larios and her family offered viable explanations for her possession of more than $4,000 (she owned two businesses that dealt largely in cash) and her frequent visits to Mexico (to visit her boyfriend, whom she lived with part-time). But the jury heard all of this evidence. We will not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder. *Dewberry*, 4 S.W.3d at 740.

## C. Summary

Viewing the evidence in the light most favorable to the verdict, we conclude that from the logical force of all of the evidence and the necessary inferences drawn from that evidence, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318–19*; Adames*, 353 S.W.3d at 860. We conclude that the evidence is sufficient to support Larios' conviction. We overrule Larios' first issue.

## III. JURY ARGUMENT IN VIOLATION OF THE RIGHT AGAINST SELF-INCRIMINATION

In what we construe as her second issue, Larios complains that during the State's closing arguments, the prosecutor made impermissible comments on Larios' silence after her arrest. Larios argues that the Fifth Amendment prohibits the State from commenting

8

on a defendant's post-arrest silence, because the State should not be allowed to raise an inference of guilt from the invocation of her constitutional rights.

There are problems with this argument that lead us to disagree. First, the Fifth Amendment has been found to protect only post-arrest, post-*Miranda* silence. *Fletcher v. Weir*, 455 U.S. 603, 607 (1982). Article I, section 10 of the Texas Constitution prevents the State from commenting on a defendant's post-arrest silence before *Miranda* warnings have been administered. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. 2004) (en banc); *Anderson v. State*, 758 S.W.2d 676, 683 (Tex. App.—Fort Worth 1988, pet. ref'd). By contrast, pre-arrest, pre-*Miranda* silence is admissible both for impeachment purposes and as substantive evidence. *Salinas v. State*, 369 S.W.3d 176, 179 (Tex. 2012), aff'd, 133 S. Ct. 2174 (2013); *cf. Franklin v. State*, 606 S.W.2d 818, 825 (Tex. Crim. App. 1978) ("It is a general rule of evidence that the prior silence of a witness as to a fact to which he has testified, where such silence occurred under circumstances in which he would be expected to speak out, may be used to impeach the witness during cross-examination.").

Second, Texas case law makes clear that a defendant's rights under the Fifth Amendment and Texas Constitution Article I, section 10 may be forfeited by failing to properly preserve error when those rights are denied by the trial court. *Heidelberg,* 144 S.W.3d at 537 (holding that Article I, section 10 is forfeitable where no proper objection is made); *Johnson v. State*, 357 S.W.3d 653, 658 n.3 (Tex. Crim. App. 2012) (holding that Fifth Amendment rights may be forfeited by failing to properly object to error); *see also Grado v. State*, 445 S.W.3d 736, 741 n.29 (Tex. Crim. App. 2014). In general, unless the error concerns a right that is deemed "absolute" or "waivable," all errors—even

9

constitutional errors—may be forfeited on appeal if a party failed to properly object at trial. *Garza v. State*, 435 S.W.3d 258, 260 (Tex. Crim. App. 2014).[1]   Larios made no objection to the State's comments at trial, let alone an objection specific enough to preserve error. *See* TEX. R. APP. P. 33.1.   Because the right against self-incrimination is forfeitable and not waivable or absolute, Larios' failure to object extinguishes this right and any corresponding error for the purposes of this appeal.   *See Garza*, 435 S.W.3d at 260.

Third, even assuming *arguendo* that this issue had been preserved, Larios' argument is unavailing.   When it is not clear from context whether a prosecutor is referring to pre-arrest silence or protected silence after arrest, the right against self-incrimination is less likely to be offended.   *See Heidelberg v. State*, 144 S.W.3d 535, 539–40 & 542 (Tex. Crim. App. 2004) (showing that where a prosecutor commented on a defendant's silence, but it was not clear whether this silence was before or after arrest/*Miranda*, the court upheld the conviction, partly because of "the lack of time-specific questions by the prosecutor").   Here, the basis of the prosecutor's comments is unclear: whether he was referring to Larios' silence and lack of surprise in the pre-arrest/pre-*Miranda* phase, the post-arrest/pre-*Miranda* phase, or the post-arrest/post-*Miranda* phase.[2]   Therefore, we cannot conclude that Larios' right against self-incrimination was offended.   *See id.*

---

[1] In this context, a "waivable" right is one that cannot be extinguished by failure to properly object to an error in applying that right, but may only be extinguished where party actively agrees not to press the right.   *See id.*   By contrast, "forfeitable" means that the right and the corresponding error are capable of being extinguished by inaction or failure to properly object.   *Id.* (citing *Janecka v. State*, 823 S.W.2d 232, 243 n.2 (Tex. Crim. App. 1990) (opinion on rehearing)).

[2] It should be noted that the State elicited testimony from Officer Ramirez about Larios' silence in a post-arrest period.   However, the record shows that Larios did not object to this testimony at trial, and Larios did not mention this testimony in her appeal.

Indeed, as the State points out, the context of the jury argument shows that the prosecutor was probably referring to Larios' silence and lack of surprise when Officer Garay first discovered the hidden marijuana and in the moments leading up to her arrest, not after her arrest. The full context of this jury argument is as follows:

> Was it a surprise to her *when they found it*? The officers even testified to that. *That she didn't ask any questions. She just went in willingly, got the handcuffs put on and that was that.*
>
> She—I mean, if somebody—is that the reaction you expect from somebody *who just found out* that they have—that they're transporting marijuana across the country, excuse me, across the U.S./Mexico border? I don't think so.
>
> I know I'd be scared. I know I'd be asking questions. Well, what are you doing? What did you find? She didn't ask anything. She just went because she knew.
>
> She knew she was caught and she knew that she had her rights. She didn't say anything. And that she could come here today and ask you to say that she is not guilty.

(Emphasis added). While somewhat unclear, the most sensible reading is that the prosecutor was describing Larios' quiet walk towards an arrest she anticipated but that had not yet occurred. Consequently, the jury was free to consider this pre-arrest, pre-*Miranda* silence as an additional affirmative link between Larios and the contraband. *See Salinas*, 369 S.W.3d at 179.

Larios failed to preserve error as to this second issue. Moreover, even if this issue was properly preserved, it is not clear that the prosecutor was impermissibly referring to any post-arrest silence. Thus, we overrule Larios' second issue.

### IV. DENIAL OF THE RIGHT TO A PUBLIC TRIAL

In her third issue, Larios contends that she was deprived of her right to a public trial when the trial court denied her request to have her daughter present during jury selection. We find that Larios failed to preserve this issue for appeal.

Just as with a defendant's rights against self-incrimination, a party may forfeit their right to a public trial under the Sixth Amendment by failing to properly object to an error applying that right. *Peyronel v. State*, 465 S.W.3d 650, 653–54 (Tex. Crim. App. 2015); *see* TEX. R. APP. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court. . . ."). The record shows that defense counsel asked the trial court to allow Larios' daughter to be present during jury selection. The trial court asked if the daughter was scheduled to testify in the case. Defense counsel confirmed that it was possible that the daughter would testify. The trial court then asked the daughter to step out into the hall during jury selection. No objection followed.

By failing to object, Larios failed to preserve any error. *See Peyronel*, 465 S.W.3d at 653–54; *see* TEX. R. APP. P. 33.1(a)(1). Accordingly, we overrule Larios' third issue.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of December, 2015.