In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00035-CR
_____

VANESSA ANN DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 16-25447

MEMORANDUM OPINION

Seeking to overturn her conviction for intoxication manslaughter, Vanessa Ann Davis argues the trial court abused its discretion by admitting evidence during the guilt-innocence phase of her trial about the results of lab tests performed on her blood. According to Davis, because a respiratory therapist drew her blood, the seizure was not authorized by the Texas Transportation Code. She argues that respiratory therapists are not among the categories of professionals authorized by

1

Chapter 724 of the Texas Transportation Code to draw blood from a person who was driving a car.[1] In her second issue, Davis argues that in assessing her sentence, the trial court improperly considered that she did not testify in her trial, violating her rights under the Fifth Amendment not to testify against herself.

We conclude the trial court did not abuse its discretion by admitting testimony about the results of the tests on Davis's blood. The evidence presented in a hearing on Davis's motion to suppress shows that Davis's blood was obtained by using a search warrant, so the Transportation Code does not provide the provisions that control whether the seizure of Davis's blood was reasonable. Second, we conclude that by failing to object to the trial court's comment indicating the trial court wished Davis had testified during the punishment phase of her trial, Davis failed to properly preserve her complaint about whether the trial court improperly considered her failure to testify. For these reasons, we affirm the trial court's judgment.

Background

Early one morning in July 2015, Davis was driving at a high rate of speed on Gulfway Drive in Port Arthur, Texas, when she lost control of her car. Davis's car collided with several objects, went airborne, and rolled over several times. Pamela Fields, a passenger in Davis's car, was thrown from the car during the collision.

---

[1] Tex. Transp. Code Ann. §§ 724.001-.064 (West 2011 & Supp. 2018).

Fields died at the scene. In late July 2016, based on the fact that Fields was killed in the collision, a grand jury indicted Davis on a charge of intoxication manslaughter.[2] Her case was tried to a jury in January 2018.

Officer Lane Cherry, a City of Port Arthur police officer, was one of the officers who was involved in the investigation of Davis's wreck on the morning that it occurred. Several hours after Davis arrived at Saint Elizabeth Hospital, Officer Cherry presented a search warrant to the hospital authorizing the police to seize samples of Davis's blood. A respiratory therapist working at the hospital drew the samples. Subsequently, Officer Cherry placed the samples into the Police Department's evidence locker. Several days later, the samples were forwarded to the Department of Public Safety's Crime Lab in Austin.

Dana Baxter, a chemist employed by the Crime Lab in Austin, was one of the witnesses who testified in Davis's trial. According to Baxter, the analysis on Davis's blood showed that it contained cocaine and benzoylecgonine, which is a metabolite of cocaine. Baxter testified that Davis either "took a whole bunch [of cocaine], or the sample was collected shortly after [she] used it."

---

[2] *See* Tex. Penal Code Ann. § 49.08(a) (West 2011) (a person commits the offense of intoxication manslaughter if she operates a motor vehicle in a public place while intoxicated and, by reason of that intoxication, causes the death of another by accident or mistake).

After jury selection, but before any witnesses testified, Davis moved to suppress the evidence related to the testing performed on her blood. She argued that the evidence was inadmissible because a respiratory therapist had drawn her blood, suggesting that respiratory therapists are not among those expressly authorized by section 724.017 of the Transportation Code to draw blood from individuals who have been operating cars.[3] In response, the prosecutor argued that the Transportation Code's provisions did not control whether the seizure was reasonable because the search in Davis's case had been conducted with a search warrant. Davis did not argue that the evidence was irrelevant to whether she lost the normal use of her faculties. Additionally, Davis did not argue that probable cause did not exist to support the magistrate's decision to issue a warrant that authorized the police to obtain a sample of her blood.[4]

The trial court denied the motion, finding that the evidence presented in the hearing demonstrated that the respiratory therapist who took Davis's blood was a "qualified technician." Section 724.017(a)(2) uses the term "qualified technician"

---

[3] *See* Tex. Transp. Code Ann. § 724.017(a) (West Supp. 2018).

[4] The warrant the magistrate issued authorized the police to direct a physician, registered nurse, medical laboratory technician, or other qualified person skilled in the taking of blood from the human body to obtain the sample.

but it does not describe the group of people who are authorized to draw blood by specifically identifying the occupations for persons who are "qualified technicians."[5]

During the trial, the trial court allowed the jury to consider testimony from a chemist at the Crime Lab showing that she tested Davis's blood and found it to contain cocaine. Based on the chemist's testimony, along with other testimony and photographs showing that Davis lost control of her car, the jury found Davis guilty of intoxication manslaughter.

After she was found guilty of intoxication manslaughter, Davis elected to have the trial court decide her punishment. The trial court then heard Fields's sister and Davis's niece testify in the punishment phase of her trial. After hearing the testimony and arguments from the parties' attorneys, the trial court assessed an eighteen-year sentence in Davis's case.[6] Immediately after pronouncing the sentence, the trial court stated: "Another thing that's very important to me that I did not say that I want you to know is I -- I wish I had heard from you. I wish I had seen something that I didn't

---

[5] *See id.* § 724.017(a)(2) (West Supp. 2018).

[6] Intoxication manslaughter is a second-degree felony, punishable by a prison sentence of not less than two and no more than twenty years. *See* Tex. Penal Code Ann. § 12.33 (West 2011) (Second Degree Felony Punishment); *Id.* § 49.08(b) (West 2011) (generally prescribing the punishment for intoxication manslaughter as the punishment that is available for second-degree felonies).

see from you during this trial and during today." Davis neither objected to the trial court's statement, nor did she move for a new trial.

Analysis

Admissibility of Evidence Related to Blood Tests

In her first issue, Davis argues the trial court erred by allowing the jury to consider testimony that the State acquired by testing her blood. In her brief, Davis argues the testimony about the results of her blood tests are inadmissible for one reason: respiratory therapists are not among those the Legislature authorized police to use under the Transportation Code to draw a sample of a driver's blood.[7] In its brief, the State argues that the search warrant issued by the magistrate controlled whether the police could legally seize a sample of Davis's blood.

We review complaints about alleged errors in admitting evidence using an abuse-of-discretion standard.[8] If the trial court's decision to admit the evidence was

_____

[7] Section 724.017 authorizes the following groups to take blood specimens at the request of peace officers: "(1) a physician; (2) a qualified technician; (3) a registered professional nurse; (4) a licensed vocational nurse; or (5) a licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic authorized to take a blood specimen [by the medical director who employs them]." Tex. Transp. Code Ann. § 724.017 (West Supp. 2018). The term "qualified technician" is not expressly defined by either the Penal Code or the Transportation Code.

[8] *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *see also Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

6

proper under any theory of law that applies to the case, its ruling will not be disturbed on appeal.[9]

While still subject to the reasonableness requirements of the Fourth Amendment, Chapter 724 of the Texas Transportation Code defines the circumstances under which a peace officer may conduct a warrantless search to obtain a specimen of a person's blood.[10] Officer Cherry, however, did not rely on section 724.017 when he seized the samples of Davis's blood. Instead, he obtained the samples with a warrant, which authorized a "qualified person skilled in the taking of blood from the human body" to draw the samples tested by the Crime Lab. Consequently, the terms of the search warrant, not section 724.017 of the Transportation Code, controlled whether the police were authorized to have a respiratory therapist draw Davis's blood.[11]

---

[9] *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

[10] *See* Tex. Transp. Code Ann. §§ 724.001-.064; *see also State v. Johnston*, 336 S.W.3d 649, 660 (Tex. Crim. App. 2011).

[11] *See State v. Johnston*, 336 S.W.3d at 661 ("Chapter 724 is inapplicable when there is a warrant to draw blood; therefore, compliance with Chapter 724 is not necessary to satisfy the Fourth Amendment."); *see also Sanchez v. State*, 365 S.W.3d 681, 684 (Tex. Crim. App. 2012) ("[a]lthough a blood draw constitutes a search under the Fourth Amendment, the Constitution will not be offended if the draw occurs pursuant to a valid search warrant").

The testimony before the trial court shows that the respiratory therapist who drew Davis's blood is authorized by the hospital to perform arterial blood draws. The evidence also shows that she has twenty-five years of experience in drawing blood. The respiratory therapist testified that she regularly performs arterial blood draws in her job at Saint Elizabeth Hospital. Because the evidence before the trial court allowed the trial court to conclude that the warrant authorized the draws that are at issue in the appeal, the trial court did not abuse its discretion by admitting the evidence showing that Davis's blood contained cocaine. We overrule Davis's first issue.

## Davis's Failure to Testify

In her second issue, Davis argues that during the punishment phase of her trial, the trial court improperly considered that she did not testify in assessing her sentence.[12] Davis cites the trial court's express statement about wanting to hear from her to support her claim that the trial court violated her constitutional rights and that she was harmed by the error.

---

[12] *See* U.S. CONST. amend. V; *see also* Tex. Const. art. I, § 10.

8

But Davis did not object to the comment when it occurred, so she failed to preserve her complaint for our review on appeal.[13] Generally, a reviewing court cannot address the merits of an issue upon appeal unless the party followed the proper procedural steps to preserve the issue for review. While the error preservation requirements in Rule 33.1 are not absolute, they generally apply to a defendant's Fifth Amendment privilege not to testify.[14] In *Johnson*, the Court of Criminal Appeals explained that "[t]he Fifth Amendment privilege against self-incrimination under a *Marin* analysis is a forfeitable privilege."[15] Since the privilege can be forfeited if not asserted, "a trial judge has no independent duty to implement a defendant's Fifth Amendment privilege."[16]

We conclude that by failing to object to the trial court's comment, Davis failed to properly preserve her complaint for our review. Because Davis raises issues that

---

[13] *See* Tex. R. App. P. 33.1 (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court by making a timely request, objection, or motion and that the trial court ruled on the request).

[14] *See Johnson v. State*, 357 S.W.3d 653, 658 n.3 (Tex. Crim. App. 2012).

[15] *Id*. (citing *Marin v. State*, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993)).

[16] *Id*. (citing *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984)).

are either without merit or not properly preserved for our review, the judgment the trial court rendered is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 5, 2018
Opinion Delivered November 14, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.